Jose ORTIZ, Plaintiff–Appellant,

v.

D. McBRIDE, Sgt. & R.O. Mara, Counselor of Arthur Kill Correctional Facility, Defendants–Appellees.

No. 02–0088.

United States Court of Appeals,
Second Circuit.

Argued: May 27, 2004.

Decided: Aug. 18, 2004.

John Boston, The Legal Aid Society (Daniel L. Greenberg, Mary Lynne Werlwas, of counsel), New York, NY, for Appellant.

David Lawrence III, Assistant Solicitor General for the State of New York (Eliot Spitzer, Attorney General of the State of New York; Caitlin J. Halligan, Solicitor General; Michael S. Delohlavek, Deputy Solicitor General; Martin Hotvet, Thomas B. Litsky, Sachin S. Pandya, Assistant Solicitors General, of counsel), New York, NY, for Appellees.

Before: CALABRESI and SACK, Circuit Judges, and PAULEY, District Judge.*

---

* The Honorable William H. Pauley III, of the United States District Court for the Southern District of New York, sitting by designation.

SACK, Circuit Judge.

In this appeal, we consider whether the exhaustion provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires a federal district court to dismiss in its entirety a prisoner's complaint brought pursuant to 42 U.S.C. § 1983 with respect to the conditions of his or her incarceration if the complaint contains any claim that has not been administratively exhausted within the prison system. Based on an examination of the text of section 1997e and the policies underlying the PLRA, we conclude that such complete dismissal is not required.

This appeal also presents the question whether the due process claim of the plaintiff-appellant, in which he alleges unusually harsh confinement in a special housing unit ("SHU"), can survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) despite the fact that his period of confinement was less than 101 days. In accordance with our recent decision in *Palmer v. Richards,* 364 F.3d 60, 64–66 (2d Cir.2004), and based on the allegations of fact of this case, we conclude that it can.

## BACKGROUND

Many of the relevant facts underlying this appeal are set forth in our prior opinion in this case. *Ortiz v. McBride,* 323 F.3d 191, 192–94 (2d Cir.2003) (per curiam). We repeat them here insofar as we think it necessary to explain our resolution of this appeal. Because the appeal is from the district court's dismissal of Ortiz's complaint, we state the facts as they are alleged in the First Amended Complaint. *See Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003).

The Arthur Kill Correctional Facility is a prison administered by the New York State Department of Correctional Services ("DOCS"). On September 29, 1998, while Ortiz was incarcerated in Arthur Kill, defendant-appellee Sergeant D. McBride, a corrections officer, confronted Ortiz with the allegations of a confidential informant that Ortiz had violated DOCS rules by smuggling drugs into, and selling them within, Arthur Kill. Ortiz denied the allegations.

Four times, McBride ordered Ortiz to take a urine test in an apparent attempt to establish that he was using (rather than that he had imported or sold) drugs. Each time, the test results were negative. Nonetheless, and despite the fact that the drug smuggling and sale allegations were based entirely on information provided to McBride by the confidential informant, McBride instituted disciplinary proceedings against Ortiz.

On October 2, 1998, the charges against Ortiz were heard in a disciplinary proceeding over which defendant-appellee R.O. Mara, an Arthur Kill counselor, presided (the "Tier III hearing"). The only evidence offered against Ortiz was McBride's statement that the confidential informant had accused Ortiz of selling drugs in the prison. Based on this evidence alone, Mara concluded that Ortiz had committed a disciplinary violation and sentenced him to ninety days of solitary confinement in the prison's SHU, as well as loss of packages, commissary, phone, and recreation privileges for that time. Ortiz appealed the decision through the channels established within DOCS for such review.

During the first three weeks of Ortiz's SHU sentence, he asserts, prison officials confined him to his cell twenty-four hours a day. He was not permitted to shower "for weeks at a time," was denied deodorant and toothpaste, was served meals later than other inmates, and "was not given eating utensils, causing plaintiff to eat with the same fingers he was unable to properly wash." First Amended Compl. ¶ 11. Ortiz's clothes were also "purposely drenched with baby oil." *Id.* Further, according to

Ortiz, "[w]hen [he] complained of the inhumane conditions, corrections officers threatened that he would be physically beaten and charged with additional infractions." *Id.* ¶ 12.

After fifty-seven days in the Arthur Kill SHU, and while his DOCS appeal was pending, Ortiz was transferred to DOCS's Fishkill Correctional Facility. There he was placed in SHU for the remaining thirty-three days of his sentence. Ortiz complains that while in the Fishkill SHU, he was "double-bunked," that is, forced to share the cell, which had only one toilet, with another inmate. According to Ortiz, the inmate with whom he shared his cell posed a physical threat to Ortiz. Ortiz does not assert, however, that he submitted formal DOCS grievances with respect to SHU conditions in either prison.

DOCS's Director of Special Housing/Inmate Disciplinary Program, Donald Selsky, ultimately reversed Ortiz's disciplinary ruling in a document titled "Review of Superintendent's Hearing." It stated, without explanation: "[Y]our Superintendent's Hearing of October 7, 1998, has been reviewed and reversed on December 28, 1998." The ruling came on the ninetieth and final day of Ortiz's SHU confinement.

On July 6, 1999, Ortiz, acting *pro se*, filed a complaint in the United States District Court for the Eastern District of New York asserting causes of action under 42 U.S.C. § 1983. He alleged that (1) the Tier III hearing, which led to the imposition of a sentence of ninety days in SHU confinement, deprived him of a liberty interest protected by the Fourteenth Amendment of the Constitution without due process of law and (2) the SHU conditions to which he was subjected constituted cruel and unusual punishment in violation of the Eighth Amendment of the Constitution as applied to New York State through the Fourteenth Amendment. He request-

ed a variety of remedies, including compensatory and punitive damages. He also alleged that he had "filed ... grievances concerning this matter" and that "all grievances [had been] denied[.]" Compl. ¶ 4.

The district court appointed counsel for Ortiz. On November 6, 2001, counsel filed a First Amended Complaint on Ortiz's behalf.

The defendants then moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaints for failure to state a claim. On March 7, 2002, the district court (Jack B. Weinstein, *Judge*), ruling from the bench, granted the motion. His ruling is set forth in full in our previous per curiam opinion as follows:

> This constitutes my opinion in the case: The Court is compelled to dismiss the case. The main problem that the court saw in the papers was the problem of lack of a test of the veracity of the informer who apparently provided the basis for the complaint by the sergeant. However, there is no point in pursuing that matter since the administrative proceedings within the prison resulted in dismissal of the complaint. So that the plaintiff has obtained all that could be obtained on that issue.
>
> With respect to the conditions within the cramped cell, the Court is compelled under the decisions of the Court of Appeals for the Second Circuit to dismiss those complaints. The Court of Appeals for the Second Circuit requires a very high standard of abuse. It has to be atypical and significant hardship under *Colon* [*v. Howard* ], 215 F.3d [227] (2d Cir.2000), and other opinions of the Second Circuit.
>
> Moreover, it is very clear that the Second Circuit in general requires special incarceration of more than 101 days. That is *Colon,* 215 F.3d at 232 . . . .

The showering and other personal issues, in connection with other circumstances, may constitute an abusive situation. However, in view of the release from these circumstances within the prison within the 90 days, and dismissal on the main issue, under the cases the Court believes it has no alternative but to dismiss.

The Court of appeals in *Neal* [*v.*] *Goord,* 267 F.3d 116 [2d Cir.2001], required dismissal for failure to exhaust administrative remedies. In this case the exhaustion with respect to the main issue resulted in a favorable decision for the plaintiff. The oral testimony as well as other information before this Court does not make clear any exhaustion with respect to these other issues.

*Ortiz,* 323 F.3d at 194 (alterations in original). The action was dismissed. The memorandum, judgment, and order of the district court did not state whether the dismissal was with or without prejudice.

Ortiz appealed. In a per curiam opinion, we ordered that appellate counsel be appointed for Ortiz and invited counsel to ask that this case be heard with other pending appeals involving related PLRA issues, *id.* at 196, which he later did. We identified four issues to be addressed "[i]n addition to any other arguments counsel may choose to raise." *Id.* They were,

(1) whether Ortiz's proffered evidence that he administratively exhausted his Eighth Amendment claim satisfies the requirements of § 1997e(a); (2) whether § 1997e(a) requires "total exhaustion" and, if so, whether Ortiz may now withdraw any unexhausted claims; (3) whether Ortiz's factual allegations that the conditions of his confinement in SHU were unusually harsh sufficed to raise the question of whether that confinement implicated a constitutionally protected liberty interest so as to preclude 12(b) dismissal; (4) whether Or-

tiz's complaint adequately pled, or could be amended adequately to plead, that the defendants are subject to supervisory liability, under the test described in *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994), for the alleged Eighth Amendment violations.

*Id.*

Ortiz concedes that his Eighth Amendment cruel and unusual punishment claim is not viable because (1) his complaint did not name the prison officials responsible for his allegedly abusive treatment during SHU confinement, and (2) the named defendants did not possess supervisory authority over the unnamed prison officials responsible for Ortiz's SHU treatment. Accordingly, Ortiz concedes that there is no issue of supervisory liability in this case. We thus limit our review to the first three of our questions.

## DISCUSSION

### I. Standard of Review

"We review a dismissal granted under Rule 12(b)(6) de novo, with all inferences drawn in favor of the nonmoving party." *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 169 (2d Cir.1999). We similarly review a district court's ruling on whether a plaintiff whose claim is governed by the PLRA has exhausted administrative remedies de novo. *See Mojias v. Johnson,* 351 F.3d 606, 608–09 (2d Cir.2003).

### II. The Status of Ortiz's Claims

■ All parties agree, as do we, that Ortiz has exhausted his available administrative remedies with respect to his due process claim. He appealed the Tier III hearing and obtained a reversal. He did not appeal to the highest level of DOCS, but inasmuch as he obtained a favorable determination regarding his due process claim, no such further appeal was required. *See Abney v. McGinnis,* 380 F.3d 663, 668, 2004 WL 1842647 (2d Cir.2004)

("To require prisoners to appeal all favorable resolutions ... would be impracticable."); *Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir.2001) (per curiam); *see also Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir.2004) ("Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases.").

■ There is no basis, however, for us to conclude that Ortiz exhausted his available administrative remedies with respect to his Eighth Amendment claim. He alleges only that he complained orally, to no avail, about the SHU conditions which are the subject of the claim. According to his complaint, "When plaintiff complained of the inhumane conditions, corrections officers threatened that he would be physically beaten and charged with additional infractions." First Amended Compl. ¶ 12. Although in some circumstances threats by prison guards may render administrative remedies "unavailable" for purposes of section 1997e(a), *see Hemphill v. State of New York*, 380 F.3d 680, 689–91, 2004 WL 1842658 (2d Cir.2004), Ortiz alleges only that he was threatened when he complained. He does not contend that the threats from guards prevented him from filing a grievance or otherwise rendered DOCS grievance procedures unavailable.

### III. Ortiz's Due Process Claim

If Ortiz's Fourteenth Amendment due process claim relating to his disciplinary hearing failed to state a claim upon which relief can be granted, the claim could be dismissed pursuant to 42 U.S.C. § 1997e(c)(2). In that case, only Ortiz's Eighth Amendment claim would remain, and, because it is unexhausted, it too would have to be dismissed under 42 U.S.C. § 1997e(a). *See infra* Part IV. Since the entire lawsuit would thus be disposed of, we would not reach the question whether a prisoner's action under 42 U.S.C. § 1983 that contains both exhausted and unexhausted claims need be dismissed in its entirety under section 1997e(a). *See id.* We conclude, however, that the complaint does state a claim for a violation of Ortiz's due process rights.

■ "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir.2001) (citation and internal quotation marks omitted). Prison discipline implicates a liberty interest when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

As a result of the Tier III hearing, Ortiz was sentenced to ninety days in SHU. According to his complaint, his treatment while in SHU was unusually harsh.

To be sure, with respect to "normal" SHU confinement, we have held that a 101–day confinement does not meet the *Sandin* standard of atypicality. *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir.1999). The duration of SHU confinement, however, is not the only relevant factor. We have said that under abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest. *See Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir.2004) ("SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ...."); *Colon v. Howard*, 215 F.3d 227, 232 n. 5 (2d Cir. 2000) ("We do not exclude the possibility that SHU confinement of less than 101

days could be shown on a record more fully developed than the one in *Sealey* to constitute an atypical and significant hardship under *Sandin*."); *Sealey*, 197 F.3d at 586 ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval ... might ... be atypical." (citation omitted)). In *Palmer*, we held that the defendant's confinement for seventy-seven days in SHU under unusually harsh conditions raised a question of fact sufficient to survive summary judgment on the issue of whether Palmer had been deprived of a liberty interest. *Palmer*, 364 F.3d at 66. The district court in the case before us thus erred when it dismissed Ortiz's due process claim based solely on the fact that his SHU confinement was for fewer than 101 days.

■ We need not delineate the precise contours of "normal" SHU confinement. For present purposes, it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Palmer*, 364 F.3d at 65 n. 3 (citing N.Y. Comp. Codes R. & Regs. tit. 7, §§ 304.1–.14, 305.1–.6 (2003)). Ortiz alleges that for at least part of his confinement, he was kept in SHU for twenty-four hours a day, was not permitted an hour of daily exercise, and was prevented from showering "for weeks at a time." First Amended Compl. ¶ 11. Based on these and Ortiz's other allegations relating to his treatment in SHU, we think that, if proved, they could establish conditions in SHU "far inferior," *Palmer*, 364 F.3d at 66, to those prevailing in the prison in general. We thus conclude that Ortiz has alleged that the ninety-day SHU sentence imposed on him was, under the circumstances, a hardship sufficiently "atypical and significant" to withstand a Rule 12(b)(6) motion as to the first part of the due process test.

In order for his due process claim to survive defendants' Rule 12(b)(6) motion, however, Ortiz must also have alleged that the prison imposed the SHU sentence without providing due process. *Giano*, 238 F.3d at 225. For a prison disciplinary proceeding to provide due process there must be, among other things, "some evidence" to support the sanction imposed. *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir.2001) (internal quotation marks omitted). In the case of a prison disciplinary sanction based solely on the evidence supplied by a confidential informant, we have said that this "some evidence" standard requires "some examination of indicia relevant to [the informant's] credibility." *Id.* (alteration in original) (citing *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir.1996)). *See also Sira v. Morton*, 380 F.3d 57, 76–78, 2004 WL 1719285, *16–*18 (2d Cir. Aug.2, 2004), 2004 U.S.App. LEXIS 15897, *49–*56 (discussing due process requirement of "some" assessment of confidential informant credibility in the context of prison disciplinary proceedings). The complaint sufficiently alleges that the "some evidence" standard was not met to survive defendants' Rule 12(b)(6) motion in this respect.

Ortiz's First Amended Complaint thus successfully states a Fourteenth Amendment due process claim. We must therefore decide whether the district court was nonetheless correct in dismissing Ortiz's action in its entirety because the Eighth Amendment claim had not been administratively exhausted.

## IV. The Dismissal of Ortiz's Action

### A. Section 1997e(a) and the Prison Litigation Reform Act

Ortiz's First Amended Complaint, as we have discussed, contained two claims: one alleging a violation of the Fourteenth Amendment with respect to which he had

exhausted his prison administrative remedies, and the other alleging a violation of the Eighth Amendment with respect to which he had not.[1] 42 U.S.C. § 1997e(a) provides:

> Suits by prisoners.
>
> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Because Ortiz "brought" this action in which he asserted a claim with respect to which "such administrative remedies as are available" had not been exhausted, the action was improperly "brought" under the language of section 1997e(a). The question, then, is whether the district court was therefore required, under a so-called "total exhaustion" rule,[2] to dismiss the action in its entirety despite the presence of an otherwise viable, fully exhausted claim. We think not.

■ We note at the outset that if section 1997e(a) deprived district courts of jurisdiction over actions containing both exhausted and unexhausted claims, the district court, being without jurisdiction, would be required to dismiss Ortiz's action in its entirety. But we have expressly held to the contrary that section 1997e(a) does not divest district courts of jurisdiction over actions containing unexhausted claims. *Richardson v. Goord,* 347 F.3d 431, 433–34 (2d Cir.2003) (per curiam). Whether a prisoner's failure to exhaust administrative remedies is grounds for dismissal of an action or not, it is not jurisdictional grounds.

■ Having jurisdiction, we proceed to examine the language of the statute to determine if it tells us whether "mixed" actions must be dismissed in their entirety. *See, e.g., Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1998) ("[W]here the statutory language provides a clear answer, [our analysis] ends there ...."); *Cervantes–Ascencio v. INS,* 326 F.3d 83, 86 (2d Cir.) (per curiam) ("When construing statutes, we look to the statutory language which, if clear on its face, ends our analysis." (citing *Hughes Aircraft Co.,* 525 U.S. at 438, 119 S.Ct. 755)), *cert. denied,* 124 S.Ct. 483 (2003).[3] We do not think that the lan-

---

**1.** As we have noted, Ortiz now concedes that his Eighth Amendment claim is not viable in any event. That does not alter the fact that Ortiz "brought," *see* 42 U.S.C. § 1997e(a), a lawsuit presenting both an exhausted claim and an unexhausted claim.

**2.** *See, e.g., Ross,* 365 F.3d at 1189 ("[T]he presence of unexhausted claims in [the prisoner's] complaint require[s] the district court to dismiss his action in its entirety without prejudice."); *Smeltzer v. Hook,* 235 F.Supp.2d 736, 742 (W.D.Mich.2002) ("Under the total exhaustion rule, the presence of an unexhausted claim warrants dismissal not just of that claim, but of the entire action.").

**3.** One Circuit has concluded, without explanation, that the language of the statute requires such dismissal. *Graves v. Norris,* 218 F.3d 884, 885 (8th Cir.2000) (per curiam)

("When multiple prison condition claims have been joined, as in this case, the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."). At least two district courts in our Circuit have, in unpublished opinions, come to similar conclusions. *See Vidal v. Gorr,* No. 02 Civ. 5554, 2003 WL 43354, at *1 (S.D.N.Y. Jan.6, 2003), 2003 U.S. Dist. LEXIS 26, at *2–*3; and *Saunders v. Goord,* No. 98 Civ. 8501, 2002 WL 1751341, at *3 (S.D.N.Y. July 29, 2002), 2002 U.S. Dist. LEXIS 13772, at *10–*11.

In *Ross v. County of Bernalillo, supra,* which we discuss in some detail below, the Tenth Circuit concluded that dismissal of a "mixed" action was required, but relied on the language of the statute only in passing. *See Ross,* 365 F.3d at 1190 ("To start, the language in § 1997e(a) itself suggests a requirement of total exhaustion because it

guage of the statute answers that question.[4]

Section 1997e(a) clearly instructs that an action such as Ortiz's containing exhausted and unexhausted claims should not have been "brought." But we do not think that it follows that the only possible response to the impermissibility of the bringing of the action is to dismiss it in its entirety—to kill it rather than to cure it. The statute does not say so. And section 1997e(c),[5] which addresses "dismissals" of

some such suits by prisoners—and is therefore the place where we would expect to find guidance as to whether dismissal of "mixed" actions is required—is silent on the issue.[6]

We thus find ourselves in a position similar to the Supreme Court's in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (assessing the requirement of "total exhaustion" in the context of habeas corpus petitions). After reviewing the statute's text, we conclude that section 1997e is "too ambiguous" to sustain the

prohibits an 'action' (as opposed to merely preventing a 'claim') from proceeding until administrative remedies are exhausted.").

4. Four district courts in this Circuit, by rejecting a "total exhaustion" rule, have at least implied that the language of section 1997e(a) does not require one. *See Scott v. Gardner*, 287 F.Supp.2d 477 (S.D.N.Y.2003); *Hattley v. Goord*, No. 02 Civ. 2339, 2003 WL 1700435, at *4–*7 (S.D.N.Y. Mar.27, 2003), 2003 U.S. Dist. LEXIS 4856, at *12–*22; *Dimick v. Baruffo*, 2003 WL 660826, at *5–*6 (S.D.N.Y. Feb.28, 2003), 2003 U.S. Dist. LEXIS 2865, at *14; *Nelson v. Rodas*, No. 01 Civ. 7887, 2002 WL 31075804, at *5 (S.D.N.Y. Sept.17, 2002), No. 02 Civ. 2151, 2002 U.S. Dist. LEXIS 17359, at *17–*22.

The Sixth Circuit, in several unpublished opinions, has tentatively adopted a rule that it need not dismiss "mixed" actions in their entirety, implying that section 1997e(a) does not require otherwise. *See, e.g., Riley v. Richards*, 210 F.3d 372 (table), 2000 WL 332013, at *2, 2000 U.S.App. LEXIS 5230, at *5 (6th Cir.2000) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999)). *But see Smeltzer*, 235 F.Supp.2d at 742–43 (criticizing *Riley* and the other, similar unpublished opinions that relied upon *Hartsfield*).

We ourselves have at least twice in the PLRA context permitted exhausted claims in "mixed" suits to survive dismissal of unexhausted claims. *See Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir.2002); *Giano v. Goord*, 250 F.3d 146, 150–51 (2d Cir.2001). We did not expressly address the statutory-language issue in those decisions, however, and therefore draw no inferences with respect to the issue from them. *Cf. Rose v. Lundy*, 455 U.S. 509, 514 n. 5, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (declining, when addressing "total exhaustion" principles in the context of 28 U.S.C. § 2254 habeas corpus appli-

cations, to give weight to the fact that in a previous case, the Court had, without addressing the issue, "reviewed the merits of an exhausted claim after expressly acknowledging that the prisoner had not exhausted his state remedies for all of the claims presented in his habeas petition").

5. 42 U.S.C. § 1997e(c) provides:

Dismissal.

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

*Id.*

6. Moreover, while section 1997e(c)(1) instructs that courts "shall ... dismiss any action brought with respect to prison conditions ... if the court is satisfied that the action [meets any one of several conditions]," section 1997e(a), by contrast, provides no such explicit instruction about how courts should respond to actions containing unexhausted claims that have been impermissibly "brought" in violation of that section.

conclusion that Congress intended to require district courts to dismiss any prisoner's action containing one or more unexhausted claims rather than to dismiss only the offending claims. *Id.* at 516, 102 S.Ct. 1198. We therefore "turn to the ... statute, its legislative history, and the policies underlying the exhaustion doctrine." *Id.* at 515, 102 S.Ct. 1198.

### B. Legislative History; Practical and "Policy" Considerations

We follow *Rose*'s guidance by looking first to section 1997e's legislative history. But the parties have not identified, and we are not otherwise aware of, any legislative history suggesting that Congress directly considered the question or had any particular intent with respect to whether "mixed" actions should be dismissed in their entirety. *See Alexander v. Davis,* 282 F.Supp.2d 609, 610 (W.D.Mich.2003) ("[T]he legislative history of the statutory section demonstrates no concern with this issue.").

█ Looking at the statute's legislative history in a more general sense, the purpose of the PLRA, originally enacted as Pub.L. No. 104–134, 110 Stat. 1321 (1996), which sets forth a broad set of rules governing litigation by prisoners in federal courts, was plainly to curtail what Congress perceived to be inmate abuses of the judicial process. *See generally* 3 Michael B. Mushlin, *Rights of Prisoners* § 16:1 (3d ed.2003); Margo Schlanger, *Inmate Litigation,* 116 Harv. L.Rev. 1555, 1565–69 (2003). To effect this goal, Congress erected an array of procedural barriers designed to make it more difficult for inmates to bring suit in federal court, including what is now codified as section 1997e(a), requiring that only administratively exhausted actions be brought. *See id.* at 1627–28. It is "[b]eyond doubt that Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also* 141 Cong. Rec. 26,553 (1995) (statement of Sen. Hatch) ("[The PLRA] will help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits.").

We do not think that a requirement that district courts dismiss "mixed" actions in their entirety would help achieve Congress's goal of improving the quality of, or judicial efficiency in disposing of, prisoners' section 1983 suits.

First, there is the danger that such a regime would create an incentive for prisoners to file section 1983 claims, if they have more than one, in more than one lawsuit.[7] This obviously would not assist in lessening the burden on district courts.

Second, as several district courts have pointed out when addressing this issue, it is doubtful that action-dismissal rather than claim-dismissal will do more than require plaintiffs who bring "mixed" actions to refile their claims with the claims that were held by the district court to be unexhausted simply omitted.

---

7. In some cases a particular prisoner's incentive to split claims created by a total exhaustion rule would likely be mitigated by other factors, such as a desire to avoid paying multiple filing fees or risking incurring three "strikes." A "strike" is incurred when a prisoner brings an action or appeal that the court dismisses on the ground that it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). A prisoner who accrues three strikes is barred from proceeding *in forma pauperis* in future suits with respect to prison conditions. *Id.* There is an exception to this bar when "the prisoner is under imminent danger of serious physical injury." *Id.* And, of course, prisoners with three strikes are free to continue filing suits with respect to prison conditions so long as they pay filing fees and court costs.

Given the short period of time allotted to prisoners to file grievances, *see e.g., Woodrich v. Greiner,* 2003 WL 22339264, at \*2 (S.D.N.Y. Oct.10, 2003) [, 2003 U.S. Dist. LEXIS 18256, at \*5] (an inmate in a New York state prison must file his or her grievance within fourteen days of the alleged grievance), "a prisoner may not be able to raise or resolve unexhausted claims within state and local institutions." *Jenkins* [ *v. Toombs,*] 32 F.Supp.2d [955,] 959 [ (W.D.Mich. 1999) ]; *see also Cole* [ *v. Miraflor* ], 2003 WL 21710760, at \*2 (S.D.N.Y. July 28, 2003) [, 2003 U.S. Dist. LEXIS 12641, at \*7–8] (holding that by failing to file grievance within the appropriate time period, prisoner had failed to exhaust administrative remedies). As a result,

> prisoners are likely to simply amend their complaints to eliminate the unexhausted claims and refile. In that case, courts would be faced with exactly the same claims they could have resolved at the outset.

*Id.*

*Scott v. Gardner,* 287 F.Supp.2d 477, 488 (S.D.N.Y.2003); *accord Blackmon v. Crawford,* 305 F.Supp.2d 1174, 1179 (D.Nev.2004); *Hattley v. Goord,* No. 02 Civ. 2339, 2003 WL 1700435, at \*7 (S.D.N.Y. Mar.27, 2003), 2003 U.S. Dist. LEXIS 4856, at \*22.

Third, prisoners' actions may present questions as to whether one or more claims have been exhausted that are not only genuine, but challenging for the courts to decide. *See, e.g., Abney v. McGinnis,* 380 F.3d 663, 2004 WL 1842647 (2d Cir.2004) (considering whether an inmate who obtains a favorable ruling that prison administrators subsequently do not implement has exhausted available reme-

dies); *Hemphill v. New York,* 380 F.3d 680, 2004 WL 1842658 (whether alleged threats to plaintiff by prison guard rendered administrative remedies not "available"); and *Johnson v. Testman,* 380 F.3d 691, 2004 WL 1842669 (2d Cir.2004) (whether successfully prosecuting a grievance contesting a disciplinary sanction was sufficient to exhaust remedies with respect to an Eighth Amendment claim against a prison guard arising from events related to the conduct for which discipline was imposed). In any such action, the district court must first familiarize itself with the case and hear the positions of the parties in order to decide the exhaustion issue as a preliminary matter. It hardly seems to aid efficiency to require that, if the court decides the claim-exhaustion issue against the prisoner, it must then dismiss any remaining exhausted claims only to allow the same case, absent the unexhausted claims, to be reinstituted, heard again on the exhausted issues, and then decided. This is all the more true when the exhausted and unexhausted claims are factually interrelated and the district court is therefore required to familiarize itself with the same factual background of the case twice.[8]

We are not the first Circuit to address the "complete exhaustion" issue based on considerations of policy and practicality. In *Ross v. County of Bernalillo, supra,* the Tenth Circuit concluded, contrary to our view, that section 1997e(a) requires dismissal of every action that contains unexhausted claims. The court relied largely on an analogy to the requirement of complete exhaustion in 28 U.S.C. § 2254 habeas corpus cases first established by the Supreme Court in *Rose v. Lundy, supra.*[9] According to *Ross,*

---

8. For this to happen, of course, the remaining exhausted claims must not be subject to dismissal on other grounds, such as the provisions of section 1997e(c)(2).

9. Section 2254 exhaustion rules have since been codified in section 2254 itself. *See* 28 U.S.C. § 2254(b) & (c).

Emphasizing comity principles, the [*Rose*] Court reasoned that the total exhaustion doctrine would 1) encourage prisoners to seek full relief first from the state courts, thus giving states the first opportunity to review claims of error, 2) create a more complete factual record that will aid federal courts in their review, and 3) relieve district courts of the difficult task of deciding whether multiple claims are severable. *Ross,* 365 F.3d at 1189 (citing *Rose,* 455 U.S. at 518–19, 102 S.Ct. 1198). Also, "[u]nder a total exhaustion rule 'both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review.'" *Id.* at 1190 (quoting *Rose,* 455 U.S. at 520, 102 S.Ct. 1198). The *Ross* court also concluded that policies underlying the PLRA supported the requirement that "mixed" petitions be dismissed in their entirety because doing so "would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints." *Id.* (citing *Porter,* 534 U.S. at 524–25, 122 S.Ct. 983).

The Tenth Circuit's carefully reasoned argument does not, however, convince us, primarily because we think its heavy reliance on *Rose* and habeas "total exhaustion" principles is misplaced.

The principles underlying habeas corpus exhaustion and section 1983 exhaustion differ significantly, making analogies between them problematic. The habeas exhaustion requirements, for example, arise out of fundamental principles of sovereignty.

The [habeas] exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Rose,* 455 U.S. at 518, 102 S.Ct. 1198 (citations, internal quotation marks, alterations, and footnote omitted). There is no comity issue of equivalent gravity "involved in prisoner civil rights actions, since prisoners are not required to press their claims in state courts and prison administrators generally limit their review to determining whether prison policy has been violated." *Scott,* 287 F.Supp.2d at 488 (quoting *Jenkins v. Toombs,* 32 F.Supp.2d 955, 959 (W.D.Mich.1999)).

And unlike the state court proceedings to which we defer in habeas proceedings, in prison administrative proceedings prison officials are generally not required to adhere to rules of evidence or other standards employed by courts of law in an attempt to assure accurate fact-finding. *See Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *id.* at 566–70, 94 S.Ct. 2963 (discussing differences between what due process requires in criminal trials and prison disciplinary proceedings); *Sira,* 380 F.3d at 660, 2004 WL 1719285, at *9, 2004 U.S.App. LEXIS 15897, at *26–*28 (same); 2 Mushlin, *Rights of Prisoners,* § 9:1 (explaining that,

in the context of prison disciplinary proceedings, "[m]any of the traditional safeguards associated with criminal trials ... such as the right to a lawyer and the opportunity to cross-examine witnesses, may not be available."). Prison proceedings, conducted according to much less exacting procedural standards than those applicable to courts, are thus much less likely than are state court proceedings to "create a more complete factual record that will aid federal courts in their review." *Ross*, 365 F.3d at 1189.[10]

In any event, a rule permitting the dismissal of unexhausted claims does indeed defer to state administrative proceedings by insisting that prison administrators adjudicate each prisoner's section 1983 claim in the first instance. The fact that it does so on a claim-by-claim basis does not seem to us to have significant implications for state/federal comity. For similar reasons, we do not find persuasive the *Ross* court's observation that dismissing "mixed" actions in their entirety will "encourage prisoners to make full use of inmate grievance procedures." *Ross*, 365 F.3d at 1189. Under a contrary rule permitting the exhausted claims to be pursued in federal courts, prisoners are also encouraged to make full use of such procedures: Unless they exhaust a claim in the prison system, it will not be heard in the courts.

Two other differences between section 2254 habeas applications and section 1983 prisoner actions also inform our judgment.

First, section 2254 applications are usually about a singular event—the petitioner's conviction in state court. The applicant's claims, exhausted or not, are likely to be different legal challenges to an interconnected series of facts raised as alternative methods to attack that conviction.

Prisoners' section 1983 actions, by contrast, routinely seek to address more than one grievance—sometimes a laundry list of grievances—relating to different events or circumstances.[11] "[T]he claims raised in a single complaint are [thus] less likely to deal with interrelated or intermingled factual issues than the claims raised in habeas petitions." *Scott*, 287 F.Supp.2d at 488 (quoting *Jenkins*, 32 F.Supp.2d at 959).

Second, a claim in a habeas application dismissed by a federal court because it is unexhausted may well yet be capable of exhaustion in the state courts and subsequent reassertion in a federal habeas proceeding. *Rose*, 455 U.S. at 520, 102 S.Ct. 1198 ("Those prisoners who ... submit mixed petitions nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims."); *see also, e.g., Rodriguez v. Bennett*, 303 F.3d 435, 438–39 (2d Cir.2002) (discussing status of a habeas petition initially dismissed for failure to exhaust and subsequently refiled following exhaustion of remedies in state court). In such a case, the originally unexhausted claim would thus be capable of eventual federal court review after state court exhaustion is completed.

---

**10.** Ortiz urges us to look to the claim exhaustion approach that courts have applied in the context of federal anti-discrimination laws such as Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. (Blue 27–30) The goals of the anti-discrimination laws to provide and implement a broad, remedial scheme preventing such discrimination, *see, e.g., Edelman v. Lynchburg Coll.*, 535 U.S. 106, 115, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002); *Love v. Pull-*

*man Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), and the goals of the PLRA are so radically different, however, that we gain no insight from the analogy.

**11.** *Johnson v. Testman*, 380 F.3d 691, 2004 WL 1842669 (2d Cir.2004), is a good example. There, the plaintiff, acting *pro se*, chose to combine in a single action different claims against different parties relating to different events.

Because of the short time-limits ordinarily applicable to prison grievance procedures, by contrast, it is unlikely that, in prisoners' section 1983 actions, the unexhausted claims will be exhausted after they are dismissed, and then brought before the federal courts for an eventual decision. *See Blackmon*, 305 F.Supp.2d at 1179; *Scott*, 287 F.Supp.2d at 488; *Hattley*, 2003 WL 1700435, at *6, 2003 U.S. Dist. LEXIS 4856, at *22; *Jenkins*, 32 F.Supp.2d at 959. Once they are dismissed they are usually forever gone.[12]

There is thus a prospect that a district court that proceeds with exhausted habeas claims but dismisses unexhausted claims will be required to examine twice, separately, the same interconnected series of facts underlying the conviction—once when the initially exhausted claims are heard and once when the subsequently exhausted claims are heard. Under those circumstances, as the Supreme Court ob-

served, "both the courts and the prisoners should benefit" from a requirement that all claims be dismissed so that all claims can later be heard at the same time, "for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review." *Rose*, 455 U.S. at 520, 102 S.Ct. 1198.[13]

But unexhausted prisoners' 1983 claims, once dismissed, are unlikely ever to be revived in the district court. And even if they are, they may well be about facts unrelated to those underlying the claims of which the court has already disposed. Addressing them in a separate proceeding may therefore involve relatively little duplication of effort. "[R]esolving all of a prisoner's civil rights claims together may [therefore] be less important" in section 1983 cases than in habeas cases. *Scott*, 287 F.Supp.2d at 488 (quoting *Jenkins*, 32

---

**12.** We express no view as to whether the result of our analysis would be the same if the prison grievance time-limits were materially longer than they are in New York State.

**13.** It is possible that if exhausted claims in mixed section 2254 habeas applications were permitted to go forward to a decision in the federal courts while the other claims were dismissed to permit exhaustion in the state courts, any subsequent attempt by the applicant to reassert the dismissed unexhausted claims in a federal habeas application would be blocked by the rules governing second or successive habeas applications now contained in 28 U.S.C. § 2244 (previously reflected in the doctrine of "abuse of the writ," *see Rose*, 455 U.S. at 514 & n. 6, 102 S.Ct. 1198). *See generally Adams v. United States*, 155 F.3d 582, 583 (2d Cir.1998) (per curiam) (discussing "stringent limits" on a prisoner's ability to bring second or successive habeas petitions under 28 U.S.C. § 2244). If this were so, the total exhaustion rule would *not* maximize the efficiency of habeas proceedings; a regime in which the federal court hears and decides the exhausted claims and dismisses the unexhausted claims which are then in most cases

forever barred by "second or successive" limitations would be perfectly efficient.

In that case, though, there would arise another reason for a total exhaustion rule in habeas cases that does not fully obtain in section 1983 cases. A total exhaustion rule in habeas cases would, in fairness to prisoners, avoid this "second or successive" barrier against ultimate pursuit of the unexhausted claims by requiring dismissal of actions containing unexhausted claims in their entirety, thereby permitting them to be brought again, after state court exhaustion, in their entirety in the federal court. *See Slack v. McDaniel*, 529 U.S. 473, 487, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) ("A petition filed after a mixed petition has been dismissed under *Rose v. Lundy* before the district court adjudicated any claims is to be treated as 'any other first petition' and is not a second or successive petition."). There is a "three strikes" rule applicable to prisoners' section 1983 suits roughly analogous to the habeas "second or successive" bar, *see supra* footnote 7. But the rule burdens rather than effectively bars subsequent section 1983 claims and is therefore less of a reason for applying a total exhaustion rule in the section 1983 context.

F.Supp.2d at 959). Indeed, it may not be important at all.

At the end of the day, then, we do not think that requiring district courts to dismiss the entirety of any prison-conditions action that contains exhausted and unexhausted claims, and thereby requiring prisoners to institute their actions containing only the exhausted claims in federal court all over again, is a meaningful way to "reduce the quantity and improve the quality of prisoner suits," *Porter*, 534 U.S. at 524, 122 S.Ct. 983, or to "help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits," 141 Cong. Rec. 26,553 (1995) (statement of Sen. Hatch). We therefore conclude that the presence of the unexhausted Eighth Amendment claim in Ortiz's complaint when he brought it did not require the district court to dismiss the action in its entirety.

We note, finally, that we expect that, in the ordinary case, once the district court dismisses the unexhausted claims, it will proceed directly to decide the exhausted claims without waiting for the plaintiff to attempt to exhaust available administrative remedies with respect to the dismissed claims. We see no reason to doubt that this is such an "ordinary" case.

### CONCLUSION

For the foregoing reasons, we vacate the judgment and remand the case to the district court for further proceedings.