Horace ABNEY, Plaintiff–Appellant,

v.

John McGINNIS, Superintendent, Mario Malvarosa, Doctor, Paul Wilson, Physicians Assistant, Ann Arckert, Nurse, John Doe, Jane Doe, et al., whose names are unknown at this time, Michael Dipompo, Doctor, Defendants–Appellees,

New York State Department of Correctional Services, New York State Medical Dept., Mile Napapa, Doctor, Defendants.

No. 02–0241.

United States Court of Appeals, Second Circuit.

Argued: May 27, 2004.

Decided: Aug. 18, 2004.

Michael E. Cassidy, Prisoners' Legal Services of New York, Plattsburgh, NY (Tom Terrizzi, on the brief), for Plaintiff–Appellant.

Martin A. Hotvet, Assistant Solicitor General, for Eliot Spitzer, Attorney General, State of New York, Albany, NY (Caitlin Halligan, Solicitor General; Michael S. Belohlavek, Deputy Solicitor General; David Lawrence III, Assistant Solicitor General; Sachin Pandya, Assistant Solicitor General, on the brief), for Defendants–Appellees.

David B. Hamm, Herzfeld & Rubin, P.C., New York, NY, for Individual Defendant–Appellee Michael DiPompo.

Before: CALABRESI and SACK, Circuit Judges, and PAULEY, District Judge.[1]

PAULEY, District Judge.

Horace Abney, an inmate at the Woodbourne Correctional Facility in Woodbourne, New York, filed suit pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York, alleging that various prison officials and state and private medical professionals violated his Eighth Amendment rights through their deliberate indifference to his medical needs. The district court (Scheindlin, *J.*) dismissed Abney's *pro se* amended complaint for failure to exhaust administrative remedies, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See Abney v. McGinnis*, 2002 WL 1461491 (S.D.N.Y. July 3, 2002). Abney appealed that dismissal and his appeal was argued alongside several others that concern the nature and scope of the PLRA's exhaustion requirement: *Giano v. Goord*, 380 F.3d 670, 2004 WL 1842652; *Hemphill v. State of New York*, 380 F.3d 680, 2004 WL 1842658; *Johnson v. Testman*, 380 F.3d 691, 2004 WL 1842669; and *Ortiz v. McBride*, 380 F.3d 649, 2004 WL 1842644. Based on the following principles, as well as those articulated in our opinions in those consolidated appeals, we vacate the district court's dismissal of Abney's complaint, and remand the case for further proceedings.

## I. Background

For purposes of this appeal, we describe the facts as alleged by Abney. In 1993, while incarcerated at Downstate Correctional Facility ("Downstate"), Abney had surgery on his feet. Orthopedic shoes and arch supports were prescribed to alleviate his pain. In January 1996, Abney was released from prison. Upon his reincarceration in April 1999, Abney requested orthopedic footwear and arch supports. When he did not receive those medical devices, Abney filed a formal inmate grievance concerning the footwear on July 13, 1999. The Inmate Grievance Resolution Committee ("IGRC") accepted Abney's recommended outcome that he receive the footware and urged expedited action. On July 27, 1999, Superintendent John McGinnis accepted the grievance and stated that Abney would be scheduled for a podiatry appointment upon receipt of his medical records. On August 30, 1999, Abney was seen by Michael DiPompo, a private orthotist, who furnished him with ill-fitting orthopedic footwear and arch supports. Thereafter, Abney complained many times about the footwear. Finally, on April 25, 2000, DiPompo provided Abney with a second pair of orthopedic boots and arch supports, which again did not fit. DiPompo informed Abney that he would return in two weeks to correct the problem. However, it was not until June 25, 2000 that DiPompo reappeared and took Abney's arch supports for repair. On July 6, 2000, Abney received a third pair of ill-fitting arch supports which appeared to him to be the same as the first pair.

On August 21, 2000, Abney filed a second inmate grievance. Once again, the IGRC accepted Abney's recommended outcome and urged that Abney "be seen by the consulting orthopod A.S.A.P." Superintendent McGinnis accepted the grievance and noted that the "consulting orthopod," DiPompo, was notified. On October 6, 2000, DiPompo returned to

1. The Honorable William H. Pauley III, United States District Judge for the Southern District of New York, sitting by designation.

Downstate and took Abney's footwear, stating that he would return in two weeks with corrected arch supports. Approximately seven weeks passed, after which Abney filed a third grievance on November 20, 2000, reiterating his complaints and noting his pain. Yet again, the IGRC accepted Abney's position, "which [it found] substantiated upon investigation," and recommended an expedited resolution. On December 5, 2000, Superintendent McGinnis accepted the grievance, and directed that appropriate footwear be issued upon receipt from DiPompo.

On January 11, 2001, DiPompo returned with a fourth set of orthopedic footwear, which also did not fit. That day, Abney addressed a letter to New York State Department of Correctional Services ("DOCS") Commissioner Glenn Goord regarding the multiple failures to furnish properly fitting orthopedic shoes. Abney filed his Section 1983 complaint in the district court on January 22, 2001. On January 24, 2001, Chief Medical Officer Lester Wright responded to Abney's January 11 letter, and asserted the issue was moot because Abney had been seen by a Nurse Administrator on January 11. On April 16, 2001, Abney filed a fourth inmate grievance about the improper medical care. That grievance was also accepted by the IGRC, which urged an "expedited resolution." On May 8, 2001, DiPompo reappeared with ill-fitting footwear and advised Abney that he would just have to adapt to them. On May 21, 2001, the acting Superintendent of Downstate, James O'Connoll, accepted Abney's April 16 grievance. After further complaints to the Downstate medical staff on June 4, 2001, an appointment was scheduled for Abney with a podiatrist at Green Haven Correctional Facili-

ty. On August 21, 2001, the podiatrist examined Abney, agreed that his orthopedic footware was defective, and took molds of Abney's feet to make corrective shoes. One month later, Abney was informed that the podiatrist's treatment regimen had been denied by prison officials and that Abney was being transferred to Eastern Correctional Facility. In all, Abney filed four formal grievances between July 1999 and April 2001.[2] Each resulted in a favorable ruling by the IGRC and the Superintendent.

On July 3, 2002, the district court dismissed Abney's complaint pursuant to Fed.R.Civ.P. 12(b)(6), concluding that he had failed to exhaust his available administrative remedies as required by the PLRA. In dismissing the action, the district court did not analyze whether administrative remedies were "available" to prisoners like Abney, who receive a favorable disposition of their grievance but learn, after the deadline for an administrative appeal has passed, that the favorable ruling is not being implemented. Instead, the district court concluded that Abney's failure to appeal the Superintendent's favorable ruling immediately to the Central Office Review Committee ("CORC") in Albany, New York meant that his administrative remedies were unexhausted. *Abney*, 2002 WL 1461491, at *3. Abney filed a timely notice of appeal.

## II. Discussion

### A. *Available Administrative Remedies*

We review a district court's judgment on the claims *de novo*. *Snider v. Melindez*, 199 F.3d 108, 113–14 (2d Cir. 1999). The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought

2. Abney acknowledges in his reply memorandum that his April 2001 grievance is "irrelevant" because it was lodged after he filed his

Section 1983 complaint with the district court in January 2001.

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Congress' purpose in enacting the PLRA was "to reduce the quantity and improve the quality of prisoner suits ... [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 524–25, 122 S.Ct. 983.

■ The PLRA does not require the exhaustion of all administrative remedies, but only those that are "available" to the inmate. 42 U.S.C. § 1997e(a). To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of." *Booth v. Churner,* 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The PLRA requirement that inmates exhaust "such administrative remedies as are available," 42 U.S.C. § 1997e(a), "refer[s] to the procedural means, not the particular relief ordered," since "one 'exhausts' processes, not forms of relief." *Booth,* 532 U.S. at 739, 121 S.Ct. 1819; *accord Porter,* 534 U.S. at 524, 122 S.Ct. 983 ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Booth,* 532 U.S. at 736 n. 4, 121 S.Ct. 1819.

■ While "our circuit has recognized that ... the PLRA's exhaustion require-ment is 'mandatory,' *Porter,* 534 U.S. at 524, 122 S.Ct. 983, certain caveats apply," *Giano v. Goord,* 380 F.3d 670, 2004 WL 1842652 (2d Cir.2004). For example, we have held that "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord,* 2004 WL 1842652, 380 F.3d 670 (2d Cir. 2004) (citing *Berry v. Kerik,* 366 F.3d 85, 87–88 (2d Cir.2004)). Defendants may also be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures. *Ziemba v. Wezner,* 366 F.3d 161, 163–64 (2d Cir.2004). Additionally, exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies, *Hemphill v. State of New York,* 380 F.3d 680, 2004 WL 1842658 (2d Cir.2004), where claims are fully exhausted through other administrative procedures which were pursued for good reasons, *Giano v. Goord,* 380 F.3d 670, 2004 WL 1842652 (2d Cir.2004), or where defendants have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman,* 380 F.3d 691, 2004 WL 1842669 (2d Cir.2004). In addition to these caveats, there are also situations in which administrative remedies are not actually "available" under the PLRA, 42 U.S.C. § 1997e(a). Frequently, availability should be evaluated before consideration of the above mentioned caveats. Accordingly, we must consider whether administrative remedies were in fact "available" to Abney in light of his explanation for the alleged failure to exhaust.

### B. *DOCS Regulations*

■ "A court may not dismiss for failure to exhaust administrative remedies unless . . . [it] determines that such remedies are available." *Snider*, 199 F.3d at 114; *accord Mojias v. Johnson*, 351 F.3d 606, 609–10 (2d Cir.2003). When determining whether an administrative remedy is available, courts "should be careful to look at the applicable set of grievance procedures, whether city, state or federal." *Mojias*, 351 F.3d at 610. DOCS has a well-established administrative grievance procedure for prisoners called the Inmate Grievance Program ("IGP"). Grievances may be informally resolved or formally lodged through the IGP grievance process. *See* 7 N.Y.C.R.R. §§ 701.7 (formal), 701.1 (informal), 701.11 (informal). The IGP is "intended to supplement, not replace, existing formal or informal channels of problem resolution." 7 N.Y.C.R.R. § 701.1(a); *accord Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir.2001) (per curiam). This action solely concerns Abney's formal IGP grievances rather than his informal efforts.

The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC, 7 N.Y.C.R.R. § 701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the IGRC's written response, 7 N.Y.C.R.R. § 701.7(b)(1); and (3) appeal to the CORC in Albany, New York within four working days of receipt of the superintendent's written response, 7 N.Y.C.R.R. § 701.7(c)(1). Notably, DOCS regulations mandate that favorable IGRC recommendations requiring action by the superintendent be transmitted to the superintendent for review, regardless of whether the inmate makes a formal appeal of that favorable action. 7 N.Y.C.R.R. § 701.7(a)(4)(vi). There is no similar procedure available for automatic advancement of a favorable ruling from the superintendent to the CORC. While the superintendent has a duty "to obtain verification of compliance with grievance decisions favorable to the inmate," 7 N.Y.C.R.R. § 701.7(b)(7), DOCS regulations fail to provide inmates with further procedural recourse where the superintendent breaches that duty. Indeed, there is no mechanism in DOCS regulations that allows inmates to appeal a favorable decision where prison officials fail to implement that decision. *See Kaplan v. New York State Dep't of Corr. Servs.*, 2000 WL 959728, at *2–3 (S.D.N.Y. July 10, 2000) (holding prisoner who successfully appealed grievance had exhausted available administrative remedies even though he did not appeal the non-implementation of the recommendation to the CORC); *see generally* 7 N.Y.C.R.R. §§ 707.7(b)(7), 707.7(c). The only DOCS regulation concerning appeals to the CORC requires that "[w]ithin *four working days* after receipt of the superintendent's written response, an inmate or any direct party to the grievance may appeal the superintendent's action to the CORC by filing an appeal with the IGP clerk." 7 N.Y.C.R.R. § 701.7(c)(1) (emphasis added).

The four-day appeal requirement in 7 N.Y.C.R.R. § 701.7(c)(1) is insufficient to provide adequate time to assess, in many cases, whether prison officials have implemented a favorable disposition of an inmate's IGP grievance. Here, defendants' failure to effect the favorable rulings in Abney's case did not become obvious for months. Defendants suggest that inmates should nevertheless file an appeal with the CORC to preserve their rights in case non-implementation occurs. We disagree. To require prisoners to appeal all favorable resolutions to the CORC within four days to account for prison officials' hypothetical non-implementation of a favorable IGP disposition would be impracticable and undoubtably burdensome on the CORC and

the IGP. Indeed, it would be counterintuitive to require inmates who win during the grievance process to appeal their victories. *See Sulton v. Wright*, 265 F.Supp.2d 292, 298–99 (S.D.N.Y.2003) ("If a prisoner had to grieve non-compliance with favorable decisions under the PLRA, prison officials could keep prisoners out of court indefinitely by saying 'yes' to their grievances and 'no' in practice.") (citing *Kaplan*, 2000 WL 959728, at *3).

Here, Abney repeatedly obtained favorable rulings on his grievances through the IGP. He adequately pleads that defendants never implemented the rulings by furnishing properly fitted orthopedic footware. As DOCS regulations do not provide a mechanism to appeal such implementation failures, the only remedy reasonably available was the filing of another grievance alerting the IGRC and Superintendent to the need for compliance. Abney did just that. And, each time Abney received favorable rulings from the IGRC and the Superintendent. Despite his dogged pursuit of repeated grievances over two years, Abney was mired in a Catch–22. The defendants' failure to implement the multiple rulings in Abney's favor rendered administrative relief "unavailable" under the PLRA. *See Dixon v. Page*, 291 F.3d 485, 490 (7th Cir.2002); *Marvin*, 255 F.3d at 43 n. 3; *Kaplan*, 2000 WL 959728, at *3; *see also Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir.2001) (holding remedies not "available" to prisoner where officials failed to respond to his grievance during time peri-

od required by regulations); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (holding remedy not "available" to prisoner where officials purportedly prevented plaintiff from employing the prison's administrative remedies); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir.1998) (per curiam) (same). As the Seventh Circuit recognized, "[r]equiring a prisoner who has won his grievance in principle to file another grievance to win in fact ... [may produce] some never-ending cycle of grievances." *Dixon*, 291 F.3d at 490. Once Abney received a favorable ruling from the Superintendent on his IGP grievances, no further administrative proceedings were available to propel him out of stasis. Consequently, there was no further "possibility of some relief" for Abney. *See Booth*, 532 U.S. at 738, 121 S.Ct. 1819.

▪ Where, as here, prison regulations do not provide a viable mechanism for appealing implementation failures, prisoners in Abney's situation have fully exhausted their available remedies. A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion. Accordingly, we find that Abney has sufficiently alleged full exhaustion of all available administrative remedies.

## III. Conclusion

This Court has considered all of the other arguments raised and finds them to be without merit.[3] For the foregoing rea-

3. DiPompo also argues on appeal that there is no federal subject matter jurisdiction over Abney's claim against him. Because there is no diversity of citizenship between Abney and DiPompo, section 1983 provides the only possible basis for subject matter jurisdiction over the claim against DiPompo. Accordingly, were it "patently without merit" because on the facts as alleged DiPompo did not act under color of law in treating Abney, no federal subject matter jurisdiction would exist,

and we would be required to dismiss the claim. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137–39 (2d Cir.2002). The claim is not, however, "patently without merit." *See West v. Atkins*, 487 U.S. 42, 55–57, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (explaining that a private physician providing medical services to state prisoners acts under color of law because a state has a constitutional duty to provide adequate medical treatment to those in its custody and the prisoner had no other

sons, the judgment of the district court is VACATED and REMANDED for further proceedings consistent with this opinion.

options for medical care other than what the state provides).