Lawrence JOHNSON, Plaintiff–
Appellant,

v.

Ronald TESTMAN, Lonnie James,
Defendants–Appellees.

No. 02–0145.

United States Court of Appeals,
Second Circuit.

Argued: May 27, 2004.

Decided: Aug. 18, 2004.

John Boston, Legal Aid Society, Prisoners' Rights Project, New York, N.Y. (Daniel L. Greenberg and Mary Lynne Werlwas, on the brief), for Plaintiff–Appellant.

F. Franklin Amanat, Assistant U.S. Attorney, for Roslynn R. Mauskopf, U.S. Attorney, Eastern District of New York, Brooklyn, N.Y. (Deborah B. Zwany, on the brief), for Defendants–Appellees.

Before: CALABRESI and SACK, Circuit Judges, and PAULEY, District Judge.[1]

CALABRESI, Circuit Judge.

Lawrence Johnson ("Johnson" or "plaintiff"), formerly an inmate at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, filed suit against the defendants, corrections officers at MDC, in the United States District Court for the Eastern District of New York. Johnson, proceeding *pro se*, sought damages under 42 U.S.C. § 1983 for injuries sustained when he was attacked by another inmate, who was allegedly incited by

---

1. The Honorable William H. Pauley III, United States District Judge for the Southern District of New York, sitting by designation.

defendant Ronald Testman ("Testman"), and when defendant Lonnie James ("James") purportedly left him for seven hours with his hands cuffed behind his back, in a cell with another inmate. The district court (Gleeson, *J.*) denied the defendants' motion to dismiss on qualified immunity grounds, but dismissed the plaintiff's complaint for failure to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Johnson appealed, and his suit was argued alongside several other cases concerning the nature and scope of the PLRA's exhaustion requirement.[2] For the following reasons, we vacate the district court's dismissal of Johnson's complaint, and remand the case for further proceedings.

### I. Background

#### A. The Bureau of Prisons' Administrative Remedy Program

The MDC, where Johnson was incarcerated during the period relevant to this appeal, is a facility operated by the U.S. Bureau of Prisons ("BOP"). The BOP provides prisoners a grievance procedure applicable to confinement-related issues. The procedure is called the Administrative Remedy Program ("ARP"), and consists of up to four steps, depending upon the circumstances. In some cases, the inmate is required to seek informal resolution of his complaint. Then, if the matter is not resolved, he must file an Administrative Remedy Request at his facility within twenty days of the incident. If the inmate is not satisfied with the facility's reply, he may file a Regional Appeal to the BOP's Regional Director within twenty days of the warden's response. In some situations, including those involving "sensitive

subjects," appeals from disciplinary proceedings, and other specified matters, the inmate may begin the process with a Regional Appeal. In all cases, if the prisoner is not satisfied with the Regional Director's resolution of the matter, he may appeal to the Central Office, within thirty days. "At all stages of the ARP, prison staff must inform the inmate in writing of the appropriate administrative procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program." *See* 28 C.F.R. § 542 (1998).

#### B. Facts and Procedural History

Johnson's allegations are set forth in his original complaint, as well as his First and Second Amended Complaints. We recount the facts as described in those three pleadings.

#### 1. Johnson's Claim against Testman

Johnson alleges that he was in the MDC barber shop with other inmates when one of the barbers asked Johnson to demonstrate a type of haircut called the "Fadeout." Defendant Corrections Officer ("CO") Testman saw Johnson using the hair clippers, asked Johnson what he was doing with them, and after hearing his reply, told the inmates that he was terminating barber shop services for the day because of Johnson's use of the clippers. When inmate Elio Franco asked why he couldn't get a haircut, Testman allegedly told him it was due to Johnson's unauthorized use of the clippers, and that if Franco "ha[d] a problem with not being able to get a haircut," he should "take it up with Johnson." Franco said "yea, O.K.," and left the area. Shortly thereafter, as Johnson was walking down a hallway, he was attacked by Franco, who plunged a tile cutter into Johnson's neck and slashed his

---

**2.** These cases were *Giano v. Goord,* 380 F.3d 680, 2004 WL 1842652; *Hemphill v. State of* *New York,* 380 F.3d 670, 2004 WL 1842658; *Abney v. New York Dep't of Corr. Servs.,* 380

face and upper torso. Johnson claims the attack caused him serious injuries to his face, neck, and upper torso, as well as "emotional damage."

After the assault, Johnson received a disciplinary infraction for "fighting with another person," and was placed in administrative detention in the Special Housing Unit (SHU) while he awaited a hearing. At the hearing, Johnson described the circumstances surrounding the attack, including Testman's alleged comment to Franco. Nevertheless—based on the incident report, his own statement, and Franco's statement—Johnson was found guilty of the infraction, and was sentenced to an additional 21 days in the SHU, the loss of 30 days of "good conduct" time, and a year's loss of visiting and commissary privileges.

Johnson appealed the disciplinary conviction to the BOP's Northeast Regional Office. On appeal, he again recounted Testman's conduct. Johnson's regional appeal was denied, and he sought review by the BOP Central Office. The Central Office ruled in Johnson's favor, finding that the incident report "[did] not describe any factual evidence inmate Johnson was actual[ly] fighting and not a victim in this case." It therefore remanded the incident report to the MDC for a new hearing, at which Johnson was exonerated.

### 2. Johnson's Claim against James

After defendants answered his original complaint, Johnson filed an Amended Complaint on March 23, 2000, naming additional defendants, adding state law claims, as well as claims against CO James based on another incident. The district court appointed counsel, who, in July 2001, filed a Second Amended Complaint on Johnson's behalf. According to the Second Amended Complaint, on October 16, 1999, James asked Johnson to come to his cell door to be handcuffed while another inmate was placed in the cell. Johnson complied; his hands were cuffed behind his back; an inmate was placed in the cell and that inmate's cuffs were removed. Johnson asked James to remove his cuffs, but James refused. Johnson then asked to speak to a lieutenant, and James denied his request. Johnson remained rear-cuffed for seven hours, and suffered severe pain in his shoulder and back, for which he was treated by the on-duty physician.

James thereafter issued a disciplinary infraction to Johnson, citing him for "refusing to obey an order of any staff member." James maintained that Johnson had refused to be rear-cuffed. Johnson was found guilty of the infraction and received a 30–day loss of visiting and commissary privileges. His appeal to the facility warden was denied, but he sought review of that denial to the Northeast Regional Office, which granted his appeal and directed MDC to conduct further investigation because the "evidence is contradictory." MDC, however, apparently failed to investigate, and Johnson filed another appeal with the Regional Office. The Regional Office "elected to expunge the incident reports," because (1) Johnson had been moved from Brooklyn to Atlanta, (2) it had taken an "extended length of time ... to correct the error," and (3) "there is a lack of sufficient information at this stage of the process to support the charges." Having prevailed, Johnson filed no further appeals.

### 3. Subsequent Procedural History

On December 7, 2001, defendants Testman and James filed a motion to dismiss plaintiff's complaint or, in the alternative, for summary judgment.[3] In their motion, the defendants contended that they were

F.3d 649, 2004 WL 1842647; and *Ortiz v. McBride*, 380 F.3d 663, 2004 WL 1842644.

**3.** While, as noted above, Johnson had originally sued various other defendants and had also brought state law claims, all these suits and claims were withdrawn by him.

entitled to qualified immunity, and that Johnson had not exhausted his administrative remedies against Testman. After oral argument on January 11, 2002, the district court denied the defendants' motion to dismiss on the basis of qualified immunity, and reserved decision on the exhaustion issue. After the Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the district court dismissed Johnson's complaint without prejudice, finding that he had failed to meet the exhaustion requirement as to his claims against both Testman and James. The court found it unnecessary to consider whether James had waived the exhaustion requirement. It noted first that our circuit had not yet decided the validity of such waivers. And then, interpreting circuit case law to require the dismissal of exhausted claims when these are filed together with unexhausted ones, the court stated that "Johnson's failure to exhaust his claim as against Officer Testman requires that I dismiss the entire case."

Johnson filed a timely notice of appeal on May 7, 2002. We appointed counsel, and ordered briefing on the following issues: (1) whether the plaintiff exhausted his claims against Testman by describing the defendant's alleged activities at the BOP's disciplinary proceedings; (2) whether Johnson exhausted his claims against James through the BOP's administrative scheme, even though he did not appeal to the Office of General Counsel; (3) whether James waived the affirmative defense of exhaustion by failing to raise that defense in his motion papers; and (4) whether the PLRA compels a rule of total exhaustion.[4]

## II. Discussion

### A. Waiver of Non–Exhaustion Defense as to Claim against James

 The failure to exhaust available administrative remedies is an affirmative defense. *Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir.1999). We have in the past instructed district courts, on remand, to consider "whether defendants waived compliance with the exhaustion requirement by failing to raise it." *Davis v. New York*, 316 F.3d 93, 101 (2d Cir.2002). At least two other circuits have explicitly held that the PLRA's exhaustion requirement may be waived, *see Perez v. Wisc. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir.1999); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir.2001). We today join them and hold that this defense is waiveable. The question, therefore, becomes, did the government waive the affirmative defense of non-exhaustion with respect to Johnson's claim against James?

 At a hearing before the district court, defense counsel stated, "[W]e are not arguing exhaustion as to [Johnson's claim against James] for the following reason, we do believe that the exhaustion requirement does apply even to that handcuffing incident or at least that it may well apply; however, we have not asserted it in our papers because we believe that there may well be a question of fact as to whether the plaintiff exhausted his administrative remedies with regard to that claim .... [W]e chose not to press it at this juncture[,] reserving the right to do so in the future if need be."[5] Later in the

---

4. We have held today, in *Ortiz v. McBride*, 2004 WL 1842644, that a rule of total exhaustion is not required by the PLRA, and that exhausted claims may be allowed to proceed while unexhausted claims are dismissed.

5. It is not clear what the government meant by the last clause of this sentence. Perhaps it

sought to win on the merits, but if—and only if—it lost on the merits, to be able to argue for a dismissal without prejudice on non-exhaustion grounds. But this it could not do. In any event, once the government chose not to argue exhaustion to the district court at the summary judgment stage, it forfeited the right to raise the issue before this court on appeal.

proceedings, the judge said, "you're not claiming exhaustion on James," and counsel replied, "I don't, correct." The government now argues that because the PLRA's exhaustion requirement did not apply to excessive force claims at the time of the hearing on the defendants' motion to dismiss, they should not now be prevented from invoking § 1997e(a). This argument is unavailing.

First, defense counsel's statement at the district court hearing belies the notion that the government declined to rely on § 1997e(a) because of a belief that it was inapplicable to Johnson's claim against James. In fact, the government's statement at the hearing specifically referred not to doubts about the legal viability of the non-exhaustion defense, but rather to "a question of fact" as to whether the plaintiff had exhausted his remedies with respect to the claim against James. Hence, it is clear that the government did not wish to rely on any argument that could not be decided in its favor as a matter of law. Further, and irrespective of that statement, the applicability of § 1997e(a) to excessive force claims was hardly well-settled at the time of the hearing on defendants' motion to dismiss. The circuits were split on the issue, and the Supreme Court had granted a petition for certiorari in *Porter v. Nussle,* the case in which the Court ultimately held § 1997e(a) applicable to excessive force claims. It follows that the government could readily have foreseen the possible Supreme Court resolution of the excessive force/exhaustion issue in its favor. The government, therefore, cannot now make the argument that it was misled by the then-current law of this circuit into waiving its affirmative defense of non-exhaustion with respect to Johnson's claim against James. Accordingly, we hold that the government waived reliance on § 1997e(a) with respect to Johnson's claim against James.

### B. Exhaustion of Claim against Testman

■ We next consider whether Johnson's appeal of his disciplinary conviction sufficed to exhaust his claim against defendant Testman. This inquiry presents two related questions. First, was complaining about Testman's conduct through a disciplinary appeal sufficient to comply with BOP regulations, or was Johnson required to file a separate grievance against Testman? Second, was the content of Johnson's submissions in the disciplinary appeal process enough to put prison officials on notice of Johnson's concerns about Testman's role in Franco's assault? For the reasons that follow, we remand these questions to the district court for further consideration.

In *Giano v. Goord,* 380 F.3d 670, 2004 WL 1842652, we today concluded that New York Department of Correctional Services ("NY DOCS") regulations governing grievance procedures were unclear. We held that, in the particular circumstances of that case, it was reasonable for the plaintiff to have raised his complaints through the disciplinary appeals process rather than by filing a separate grievance. In *Hemphill v. New York Dep't of Corr. Servs.,* 380 F.3d 680, 2004 WL 1842658, also decided today, we remanded the case to the district court so that it might consider, *inter alia,* whether the allegedly confusing nature of N.Y. DOCS regulations justified the plaintiff's failure to file a grievance in the manner that DOCS officials now prescribe. Here, Johnson contends that because under BOP regulations the appellate process for disciplinary rulings and for grievances is one and the same, he reasonably believed that raising his complaints during his disciplinary appeal sufficed to exhaust his available administrative remedies.

Johnson's argument cannot be dismissed out of hand, especially since the district

court has not had the opportunity to examine it. But before we determine how best to deal with this argument, we must ask whether Johnson's submissions in the disciplinary process were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).

■ The PLRA's exhaustion requirement is designed to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524–25, 122 S.Ct. 983. As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir.2004). Thus, the Seventh Circuit has held that, if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002).

■ We believe that this formulation is a sound one. Uncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading. Still, the PLRA's exhaustion requirement does require that prison officials be "afford[ed] ... time and opportunity to address complaints internally." *Porter*, 534 U.S. at 524–25, 122 S.Ct. 983. In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.

Here, the plaintiff's initial answer in his disciplinary proceeding did not mention Testman or his remark to Franco. In Johnson's regional appeal, however, in the course of arguing that the altercation with Franco was not Johnson's fault, Johnson described Testman's statement to Franco that "if you have a problem with it take it up with Johnson." Johnson's Central Office appeal included a similar description. But prison officials' responses to Johnson's appeals do not indicate that the officials considered Johnson's disciplinary appeal to be a complaint about Testman's conduct. And the defendants argue that Johnson's passing references to Testman's remark afforded prison authorities no way of knowing that Johnson believed Testman was culpable for inciting Franco's assault. On the other hand, the plaintiff contends that his submissions clearly described Testman's conduct, and that prison officials had all the information necessary to launch an investigation into whether Testman had provoked Franco to attack the plaintiff.

Whether or not Johnson's disciplinary appeals was enough to "alert[ ] the prison to the nature of the wrong for which redress is sought," *Strong*, 297 F.3d at 650, is not manifestly obvious. It is also a question that the district court has not yet had an opportunity to consider. Under the circumstances, we deem it appropriate to remand the issue to that court. And, since a remand is called for, we believe it wise to have the district court also examine, in the first instance, whether, in light of our reasoning in *Giano* and *Hemphill*, the BOP grievance regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings.

On remand, the district court should therefore determine, in whatever sequence

it deems appropriate, (1) whether Johnson was justified in raising his complaint about Testman through a disciplinary appeal, rather than by filing a separate grievance, and (2) whether Johnson's descriptions, in his disciplinary appeals, of Testman's conduct, can be construed as "afford[ing] corrections officials time and opportunity to address complaints internally." *Porter*, 534 U.S at 525, 122 S.Ct. 983.

### C. Qualified Immunity

The defendants contend that both Testman and James are entitled to qualified immunity from Johnson's suit against them. For substantially the reasons stated orally by the district court in its denial of the defendants' motion to dismiss on qualified immunity grounds,[6] we agree that qualified immunity is not appropriate at this time.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

---

6. With respect to defendant Testman, the court stated:

> [I]t might be the case that Testman knew very well because of prior conversations with Franco that all he had to do to Franco in order to get Franco to stab this prisoner was to tell Franco to take it up with him. In those circumstances the question would be whether or not it is clearly established ... [a]s of 1998 that it is a violation of a prisoner's Eighth Amendment rights for a guard to knowingly solicit, more than solicit, direct one inmate to stab another in the neck with a knife. To my mind that set of facts would disentitle Testman to qualified immunity.

> As to defendant James, Judge Gleeson said:
> To the extent that the motion to dismiss is based on qualified immunity grounds as to James, again, there are facts surrounding the bare-boned facts that I accept as true that are alleged in the complaint that would place in even clearer relief the obvious violation of a clearly established right, not to be subjected to cruel and unusual punishment; specifically ... that James' intent in handcuffing Johnson behind his back to his cell for no apparent reason for seven hours was in fact for the sole reason to inflict wanton, gratuitous, cruel pain on him. In those circumstances there would be a clearly established right under the Eighth Amendment not to be subjected to that sort of cruel and inhumane punishment that would deprive the defendant on those facts of qualified immunity.