Damion A. GOLDSMITH, Plaintiff,

v.

P. WHITE, et al., Defendants.

No. 5:04cv72–RH/WCS.

United States District Court,
N.D. Florida,
Panama City Division.

Feb. 28, 2005.

Damion A. Goldsmith, Raiford, FL, pro se.

## ORDER FOR DISMISSAL

HINKLE, Chief Judge.

The issue in this case is whether the plaintiff state prisoner adequately exhausted his administrative remedies prior to the filing of this federal civil rights action, which alleges that a correctional officer took plaintiff's contact lenses because plaintiff is homosexual. Plaintiff filed grievances contesting the officer's taking of the contact lenses, but plaintiff made no mention in the administrative process of his sexual orientation or of the claim that this was the reason for the taking of the lenses. Nor did plaintiff mention in his grievances the contemporaneous bigoted statement of the officer who took the lenses. I conclude that plaintiff's claim of discrimination based on sexual orientation must be dismissed for failure to exhaust administrative remedies.

### I

Plaintiff Damion A. Goldsmith is an inmate in the Florida Department of Corrections. In his complaint in this court, Mr. Goldsmith alleged that he was allowed to have contact lenses in five institutions over a period of four years, ending when the defendant correctional officer P. White learned Mr. Goldsmith was homosexual. Mr. Goldsmith alleged that Officer White took his contact lenses and, in violation of DOC policy, did not allow Mr. Goldsmith to mail them home, resulting in a loss of over $500. Mr. Goldsmith alleged that Officer White did this because of Mr. Goldsmith's sexual orientation.

Prior to the filing of the complaint in this court, Mr. Goldsmith had filed a series of administrative grievances and appeals. Copies are attached to the complaint in this court. The grievances and appeals challenged the taking of the contact lenses but made no assertion that Mr. Goldsmith was homosexual or that his sexual orientation had anything to do with the taking of the lenses. The grievances and appeals made no reference to an additional fact on which Mr. Goldsmith now relies: that Officer White said, when he took the contacts, that he was doing so "because I don't like you fagots anyway." (Document 21 at 4.)

In response to Mr. Goldsmith's grievances and appeals, DOC officials made no mention of homosexuality—the issue had not been raised—but DOC did give a series of explanations for the taking of the contact lenses that Mr. Goldsmith alleges were pretextual. Thus, for example, DOC

said there was no documentation Mr. Goldsmith actually possessed contacts at earlier times (document 1 ex. D), but that is untrue (there is ample indication in DOC records of Mr. Goldsmith's prior possession of contacts) and not much of an explanation in any event (there probably is no documentation he wore a shirt or had ears, but he almost surely did). DOC said having brown contacts was a security risk because they could be used to change an inmate's appearance (document 1 ex. D), but Mr. Goldsmith's natural eye color is brown, so brown contacts hardly posed such a security risk. Later, when Mr. Goldsmith challenged the assertion that brown contacts could be used to alter his appearance, DOC acknowledged his natural eye color was indeed brown, but DOC said there was no documentation that the *contacts* were brown, thus apparently suggesting that the contacts could still have been used to alter his appearance. (Document 1 ex. E.) But it would be an especially inept correctional staff that could be so easily fooled, particularly by an inmate whose natural eye color was brown and thus could not easily be changed with contacts, and in any event, Mr. Goldsmith says the contacts were not tinted sufficiently to affect his appearance at all.

Upon initial review of the complaint, the Magistrate Judge entered a Report and Recommendation concluding that the complaint should be dismissed for failure to state a claim on which relief could be granted. The Report and Recommendation concluded, correctly, that to the extent the complaint sought relief on theories *other than* discrimination based on sexual orientation, the complaint failed to state a claim. I accepted the Report and Recommendation to that extent. The Report and Recommendation concluded that the complaint did not adequately allege discrimination based on sexual orientation. I rejected the Report and Recommendation to that extent, concluding that the com-

plaint's allegations of discrimination on this basis were sufficient. Defendants have not denied that taking a prisoner's contact lenses because of his sexual orientation would be unconstitutional.

As a result of my ruling that the complaint adequately stated a claim of discrimination based on sexual orientation, the complaint was served. Defendants now have moved to dismiss for failure to exhaust administrative remedies. The Magistrate Judge has entered a Report and Recommendation concluding that the motion should be denied. Defendants have filed objections. I have reviewed de novo the issues raised by the objections.

## II

■ Under the Prison Litigation Reform Act, inmates must exhaust administrative remedies prior to filing actions of this type. *See* 42 U.S.C. § 1997e(a). Mr. Goldsmith filed (and pursued to the end of the line) grievances and appeals challenging the taking of his contact lenses. The only issue is whether those filings were sufficient to exhaust his remedies with respect to the claim—never mentioned in the administrative process—that the lenses were taken because of Mr. Goldsmith's sexual orientation.

■ For purposes of § 1997e(a), the issue of the level of specificity that must be included in an administrative petition (for example, in a grievance) is determined, at least in the first instance, by reference to state law. *See, e.g., Strong v. David,* 297 F.3d 646 (7th Cir.2002). This is so because it is *state* remedies that must be exhausted; a prisoner must exhaust whatever remedies the state provides, and in order to do so, the prisoner ordinarily must comply with the applicable procedures established by the state. An unbroken series of circuit decisions has followed *Strong* on this choice of law issue. *See,*

*e.g., Johnson v. Johnson,* 385 F.3d 503, 517 (5th Cir.2004) (citing *Strong* and concluding, "the specificity requirement should be interpreted in light of the grievance rules of the particular prison system"); *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir.2004) ("we agree with [*Strong*] that prison grievance procedures supply the yardstick for measuring procedural default"); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004) (adopting *Strong's* reasoning as sound). The law of the Eleventh Circuit, though not as explicit as these decisions, apparently is in accord. *See Miller v. Tanner,* 196 F.3d 1190 (11th Cir.1999) (analyzing state procedural requirements to assess adequacy of inmate's exhaustion).

In Florida, the administrative process available to inmates of the Department of Corrections begins with the submission of an informal grievance on Form DC6–236. *See* Fla. Admin. Code R. 33–103.005(2). The form includes no instructions on what information must be provided. (*See, e.g.,* Compl., document 1, ex. D.) The only requirement established by the Department's rules is that the "inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." Fla. Admin. Code R. 33–103.005(2)(b)2. By its terms, this mandates no level of detail at all, requiring only that whatever facts are stated must be true. Plaintiff's omission of any reference to his homosexuality did not violate this requirement.

Even so, there is undoubtedly a threshold level of information an inmate must provide in the administrative process in order to meet the federal exhaustion requirement. This is so because, if an inmate was not required to provide enough information to allow prison officials to investigate the inmate's real complaint, the purposes for which Congress adopted the exhaustion required would not be met. Thus, as one court said, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Testman,* 380 F.3d at 697.[1]

In *Brown v. Sikes,* 212 F.3d 1205 (11th Cir.2000), the Eleventh Circuit may have gone substantially further, saying:

> We hold that 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance *as much relevant information about his claims ... as the prisoner reasonably can provide.*

*Brown,* 212 F.3d at 1210 (emphasis added). The court's characterization of this standard as a "holding" was less than precise. The issue was whether the prisoner was required to include in his grievance the name of the correctional officer who committed the acts at issue, even though the prisoner did not know the officer's name. The court *held* that the omission of the unknown name was not fatal; as the court said, a remedy that requires a prisoner to provide information he does not have is not an "available" remedy. *Brown,* 212 F.3d at 1208.

*Brown* thus dealt with the effect of omitting *unknown* information—not how much of the *known* information must be provided. The court *held* simply that the prisoner was not required to include in his grievance a name he did not have. Still, by calling the standard quoted above a "hold-

---

1. That federal law requires that an inmate provide some minimum level of information in order to exhaust probably adds nothing to state law. Every state, presumably, would require an inmate to provide some level of information in order to pursue a grievance; otherwise the process could not work. Although the Florida regulations do not explicitly so provide, Florida law presumably requires (implicitly) that a grievance include some minimum level of information, in order to advise prison authorities of the nature of the grievance.

ing," and articulating that standard in terms addressing not only what may be omitted, but also what must be included, the court apparently intended to specify the standard that district courts in this circuit—including this court—must apply in situations such as the case at bar.

Perhaps understandably, therefore, defendants ardently invoke the *Brown* standard in the case at bar. *See* Defendants' Objections (document 33) at 5, 7, 8, 9 & 11. One doubts the Department of Corrections really wants grievances that set forth every known fact; the experience in this court is that 60 or 100 page single-spaced handwritten complaints are not very helpful and are instead enormously burdensome. And if the DOC wanted this level of detail, it could so provide in its regulations. But the DOC has not done so, requiring only that any included facts be accurately stated.

Moreover, a system that made dismissal of a lawsuit proper unless every known fact was included in a grievance might be completely unworkable or at least counterproductive. It would be a rare case in which defendants could not find some fact that allegedly was not included in a grievance, thus potentially leading to fact-intensive litigation over exhaustion at the outset of nearly every prisoner case. This would impose a substantial burden on district courts. The purpose of the exhaustion requirement is to avoid, not foster, this type of burden.

In sum, there are reasons to doubt that the literal *Brown* standard ultimately will be deemed applicable in all prisoner cases. This is an issue I need not resolve, however, because Mr. Goldsmith not only failed to include all known facts; he failed even to identify the problem (discrimination based on sexual orientation) or to mention the core facts on which his claim was based (that he is homosexual, and that Officer White used a bigoted reference to homosexuality when he took the action at issue). The failure to mention homosexuality would constitute a failure to exhaust even under a standard far more modest than that articulated in *Brown*. *See, e.g., Testman*, 380 F.3d at 697 ("inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures").

The closest case factually is perhaps *Johnson v. Johnson*, 385 F.3d 503 (5th Cir.2004). There, a prisoner alleged that officials failed to protect him from assaults by other inmates. In the administrative process, the prisoner presented facts regarding the assaults and regarding his homosexuality. He made no mention, however, of his race, nor of any reason to believe race had anything to do with his treatment. When the prisoner later filed a federal lawsuit, he sought recovery on three theories: imposition of cruel and unusual punishment, denial of equal protection based on homosexuality, and denial of equal protection based on race. The Fifth Circuit held that the prisoner had adequately exhausted his Eighth Amendment and sexual orientation claims but had *not* adequately exhausted his race claim. In reaching this conclusion, the court acknowledged that, in a grievance, a prisoner need not specify his legal theories, but the court said the grievance "must alert prison officials to a problem and give them an opportunity to address it." 385 F.3d at 518. Because the prisoner had failed to alert officials to any possible race problem, he had failed to exhaust that claim.

The same reasoning is fully applicable in the case at bar. Here, in the administrative process, Mr. Goldsmith did not mention his sexual orientation or give officials any reason to believe sexual orientation had anything to do with his treatment, just as the prisoner in *Johnson v. Johnson* did

not mention his race or give officials any reason to believe race had anything to do with his treatment. Here, as in *Johnson,* the claim based on facts that were not mentioned was not adequately exhausted. Here, as there, the claim must be dismissed.

This does not mean, of course, that DOC is free to discriminate against Mr. Goldsmith based on his homosexuality. He remains free to exhaust his claim that he is being denied contacts based on his sexual orientation and, if he gets no relief, to return to this court. More fundamentally, DOC now has notice of his claim. If there are no legitimate reasons to prevent Mr. Goldsmith from possessing contact lenses, he should be allowed to have them. Nothing in this order would prevent DOC from remedying any action that may have been taken improperly.[2]

For these reasons,

IT IS ORDERED:

Defendants' motion to dismiss (document 31) is GRANTED. The clerk shall enter judgment stating, "This action is dismissed. The dismissal of plaintiff's claim that he suffered discrimination as a result of his sexual orientation is without prejudice based on failure to exhaust administrative remedies. The dismissal of plaintiff's other claims is with prejudice." Dismissal is not based on 28 U.S.C. § 1915(e)(2)(B).

SO ORDERED this 28th day of February, 2005.

---

**2.** This order expresses no opinion regarding whether Mr. Goldsmith's contacts were or were not improperly taken or whether his sexual orientation did or did not have anything to do with any aspect of his treatment.