24-100-pr
*Baltas v. Jones*

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2024
No. 24-0100-pr

JOE BALTAS,
*Plaintiff-Appellant,*

*v.*

KIM JONES, In her individual capacity, MICHAEL CALDERON, In his
individual capacity, DAVID MAIGA, In his individual capacity,
MONICA RINALDI, In her individual capacity,
*Defendants-Appellees.*

ARGUED: MAY 21, 2025
DECIDED: DECEMBER 15, 2025

Before: KEARSE, JACOBS, and LOHIER, Circuit Judges.

Plaintiff Joe Baltas, who is in the custody of the Connecticut
Department of Corrections (DOC), filed a complaint under 42 U.S.C.
§ 1983 against four officers. The district court granted the
defendants' motion for summary judgment on all claims.

This opinion resolves a single due process claim: that the
hearing on whether Baltas would be designated to a restrictive
housing status was predetermined. His remaining claims are
resolved in a summary order filed contemporaneously herewith. As
to the due process claim at issue, we conclude that Baltas's

administrative grievance was inadequate to give prison officials notice of that claim, and that he thus failed to exhaust administrative remedies. The district court's grant of summary judgment to the defendants on this claim is therefore affirmed.

**AFFIRMED**.

Judge Lohier filed a separate opinion concurring in part and dissenting in part.

> JOSHUA MATZ, Hecker Fink LLP, Washington, DC (Zachary J. Piaker, Hecker Fink LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

> EVAN O'ROARK, Assistant Solicitor General, *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT, *for Defendants-Appellees*.

DENNIS JACOBS, *Circuit Judge*:

Plaintiff Joe Baltas, who is in the custody of the Connecticut Department of Corrections (DOC), alleges that he suffered constitutional violations at DOC's Garner Correctional Institution, based on his assignment to a restrictive housing status called Chronic Discipline (CD) and the conditions he faced in the Restrictive Housing Unit (RHU). Baltas filed a *pro se* complaint under 42 U.S.C. § 1983. The district court granted the defendants' motion for summary judgment on all claims.

Now aided by appointed counsel, Baltas argues on appeal that the defendants violated his right to due process multiple times, including both when they assigned him to and then decided to keep him on CD; that, while he was on CD, he was prevented from performing a Native American ritual involving burning herbs; that his living conditions amounted to cruel and unusual punishment; and that he was unlawfully and routinely strip-searched. Most of Baltas's claims are addressed in a summary order filed contemporaneously herewith.

This opinion resolves only one of Baltas's due process claims: that the hearing on whether Baltas would be designated to CD status was predetermined to the point of being "no review at all." *See Proctor v. LeClaire*, 846 F.3d 597, 610 (2d Cir. 2017).[1]   For the following reasons, we conclude that Baltas's administrative grievance was inadequate to give prison officials notice of the claim in the form that Baltas now presses it.   Since he thus failed to exhaust administrative remedies, the district court's grant of summary judgment to the defendants on this claim is therefore affirmed.

**I.**

We recite the facts in the light most favorable to Baltas, with all factual disputes (of which there are many) resolved in Baltas's favor. *See Brandon v. Kinter*, 938 F.3d 21, 31 (2d Cir. 2019).[2]   The defendants

---

[1]  When we appointed counsel, we directed the parties to brief this issue.   Appointed counsel have ably discharged their responsibilities and the Court appreciates their service.

[2]  Baltas verified his complaint, so it "can be considered as evidence for summary judgment purposes."   *Brandon*, 938 F.3d at 26 n.5.

are (1) Kim Jones, Garner's deputy warden for treatment and programs, (2) Michael Calderon, Garner's counselor supervisor, (3) David Maiga, director of DOC's Office of Classification and Population Management, and (4) Monica Rinaldi, DOC's deputy commissioner of operations.

During his incarceration at Garner between late 2017 and early 2018, some of the prison staff began subjecting Baltas to false disciplinary complaints. He was twice placed in the RHU on the ground of disciplinary infractions.

When Baltas was on the cusp of release from a stay in restrictive housing, the unit manager, non-party Captain George Hurdle, emailed Defendants Calderon and Jones: "What are we doing with this inmate???? He may be getting out of RHU tomorrow." A-552.[3] Jones responded "you may need to re-route him to G-unit"--i.e., non-restrictive housing. *Id.* Hurdle replied, "Please don't give him any more outs . . . . I can't afford any more in G[-unit]." *Id.*

---

[3] Citations to "A-" refer to the joint appendix.

Jones then emailed Calderon and a non-party: "Subject: Baltas | Please process for CD. Thank you." A-553. Under DOC regulations, CD is a "restrictive housing status that results in management of an inmate whose behavior, while incarcerated, poses a threat to the security and orderly operation of the facility, or a risk to the safety of staff or other inmates due to repetitive disciplinary infractions." DOC Administrative Directive 9.4 § 3(H) (A-277). An inmate who has accumulated "three (3) or more class A disciplinary offenses within 180 days" is given "[a]utomatic consideration" for CD. *Id.* § 10 (A-281).

On April 10, 2018, Baltas received notice that his hearing would take place three days later. The notice form recited that Baltas had "five (5) class A disciplinary offenses within 180 days," A-190, meaning Baltas qualified to be automatically considered for CD. Baltas requested the chance to present witnesses and evidence, as well as the assistance of an advisor for the hearing. He designated another DOC official, Paolo Santilli, as his advisor. Nevertheless, the notice of hearing states that Baltas had declined an advisor;

6

although "CTO Santilli" is identified as the would-be advisor on the notice, his name has been crossed out.  *Id.*

On April 11, Defendant Calderon commenced the CD hearing two days early.  The next day, Calderon submitted a form to Defendant Maiga recommending Baltas for CD.  It read: "Inmate Baltas was admitted into the DOC on 10/26/2006 with a Disciplinary Risk score 4 since 5/25/2007.  During a 180 day period, inmate Baltas has accumulated 5 Class A Disciplinary offenses.  He has a Disciplinary history total=64" (i.e., 64 different infractions) "with last [Disciplinary Report] on 3/22/2018."  A-179.  Maiga adopted Calderon's recommendation as follows: "CD placement authorized. Meets criteria for placement."  A-179.  Baltas was assigned to CD.

## II.

Baltas protested his CD placement in a 2018 administrative grievance, and does so now in his 2021 federal complaint.  Though the accounts considerably overlap, the federal complaint includes a critical allegation that was not expressed in the grievance: Calderon's

7

alleged admission that the CD hearing was not just unfair, but pretextual.

Baltas's 2018 Inmate Administrative Remedy Form, which grieved his placement on CD to DOC officials, alleged several procedural improprieties by Calderon: (1) he "requested Advisor Services via CTO Santilli" but "did not receive Advisor Services," and that Calderon knew as much; (2) he "received notification that [his] hearing would take place on" April 13, but "Calderon conducted the Hearing on" April 11, "in violation of the designated hearing schedule"; (3) Calderon "know[ingly]" introduced "false" disciplinary reports, which were the fruit of "orchestrate[d]" "staff Harassment & improprieties"; and (4) DOC assigned Baltas to restrictive housing based on his CD status before adjudicating his appeals of his disciplinary reports. A-258 to -259 (the full text of this grievance is included as an Appendix to this opinion). After conducting a "comprehensive review" of Baltas's "Disciplinary History," Defendant Rinaldi denied this grievance. A-256.

8

Three years later, in his federal complaint, Baltas alleged for the first time that Calderon admitted during the CD hearing that he had been *ordered in advance* to recommend Baltas for CD. According to the complaint, when Baltas protested that he had no advisor and no opportunity to prepare, *see* A-25 ¶ 36, Calderon responded: "[T]he [deputy wardens]" (i.e., Defendant Jones) "want you on CD so" Baltas was "going on CD," and therefore "[n]one of that matters," *id.* ¶ 37. Calderon ruled that Baltas was "not getting an advisor, or witnesses, or evidence," *id.*, stating that he was "only doing what Jones told him to do" and that he "has to do what his boss tells him." *Id.* ¶ 38. When Baltas asserted that he was the victim of "fraudulent reporting and harassment," Calderon confirmed that he "was aware of all the recent issues," but said it "made no difference because Jones has already decided you're going on [C]hronic [Discipline]." *Id.* ¶¶ 39-40.

**III.**

We review a district court's grant of summary judgment *de novo*. *Brandon*, 938 F.3d at 31. Summary judgment may be granted

9

only if the court concludes that the case presents "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists-- and summary judgment is therefore improper--"where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Brandon*, 938 F.3d at 31. In reviewing the district court's grant of summary judgment, we "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees a prisoner's right to some notice and opportunity to be heard before he is placed on restrictive housing. See *Proctor*, 846 F.3d at 609. "[W]henever process is constitutionally due, no matter the context, it must be granted at a meaningful time and in a meaningful manner." *Id.* (citation modified). Accordingly "[r]eview" of a prisoner's restrictive housing "with a pre-ordained outcome is tantamount to no review at all," and therefore violates due process. *Id.* at 610. "It is not sufficient for officials to go through

10

the motions of nominally conducting a review . . . when they have developed a pre-review conclusion that the inmate will be confined in [segregated housing] no matter what the evidence shows." *Id.*

Before a prisoner can present a claim that prison officials thus violated his due process rights to a federal court, he must first exhaust available administrative remedies in the prison disciplinary system. *Edwards v. Arocho*, 125 F.4th 336, 346-47 (2d Cir. 2024) (discussing the Prison Litigation Reform Act (PLRA), Pub. Law No. 104-134, 110 Stat. 1321 (1996) (codified in relevant part at 42 U.S.C. § 1997e(a))). Exhaustion under the PLRA requires that a prisoner plaintiff "alert[] the prison to the nature of the wrong for which redress is sought." *Id.* at 347 (citation omitted). Importantly, we "may not excuse a failure to exhaust" administrative remedies. *Ross v. Blake*, 578 U.S. 632, 639 (2016). If a prisoner fails to exhaust his claim, it must be dismissed.

The pleading standard for an administrative grievance is "similar to notice pleading in that [the grievance] need only object intelligibly to some asserted shortcoming, and adequately describe

11

the alleged misconduct." *Edwards*, 125 F.4th at 347 (citation modified). This is a more lenient standard than the plausibility pleading required in federal court: "The grievant is under no obligation to lay out the facts, articulate legal theories, or demand particular relief." *Id.* (citation modified).

That said, PLRA exhaustion requires that prison officials be "afforded . . . time and opportunity to address complaints internally." *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

There is no question that Baltas administratively grieved his placement on CD. His Inmate Administrative Remedy Form vigorously contended that this placement violated his right to due process under the Fourteenth Amendment, and enumerated the asserted due process violations: (1) deprivation of advisor services; (2) inadequate notice; (3) receipt into evidence of the underlying

12

disciplinary reports, which Baltas alleges were "false" and "orchestrate[d]"; and (4) assignment to the RHU before appeal. A-258 to -259. That grievance sufficiently "alert[ed] the prison" that Baltas thought Calderon was an unfair adjudicator, even a biased one, and that Calderon's recommendation to Maiga and Maiga's acceptance of it were compromised. *See Edwards*, 125 F.4th at 347 (citation omitted).

So Baltas plainly advanced a claim that his CD placement was "predetermined" in the sense that it was a foregone conclusion. But he had after all allegedly accrued more than enough class A disciplinary offenses for automatic consideration for CD; and it cannot be surprising that prison staff are familiar (as they should be) with the inmates in their custody. *Cf. Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ("[T]he degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally."). All of the errors and improprieties alleged in the grievance--notice, assistance, evidentiary rulings--could be corrected on review of Calderon's decisions, however wrong.

13

In contrast, Baltas did *not* adequately grieve the claim he later raised in federal court: that the outcome of the hearing was "predetermined" in the literal sense because Calderon was powerless to reach any other outcome. *See Walker v. Bellnier*, 146 F.4th 228, 261 (2d Cir. 2025) ("A reasonable juror could conclude that . . . review was not meaningful regarding these earlier periods, since [a prison official] had already decided that [the plaintiff] should be retained in [restrictive housing] through a later date."). The federal complaint alleges that Calderon told Baltas emphatically that the hearing was a pretext--that Jones "want[ed] [Baltas] on CD so" Baltas was "going on CD" because Calderon "ha[d] to do what his boss tells him." A-25 ¶¶ 37-38. Baltas's grievance did not alert prison officials that he was alleging the due process violation of no hearing at all.

The administrative grievance failed to give notice in the specific sense that notice is needed "to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697. A grievance that established bias and impropriety by the adjudicator would presumably be remedied by replacing the adjudicator. But

14

that internal remedy would not work if the outcome of the hearing had been dictated from above, especially (as alleged here) dictated by the official who would implement the remedy. That is why Baltas's present complaint is different in kind from the grievances he advanced in the administrative process.

Given the nature of Baltas's predetermination claim, notice pleading demanded more of him. Baltas's belated contention that Calderon was a pawn under orders to decide against him constitutes "the sort of 'structural defect' that is not subject to harmless error analysis." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991). And such a defect at one level of review can infect the whole process; Maiga's review of Calderon's recommendation would not have been enough to insulate it. *See Proctor*, 846 F.3d at 610, 612-15. Thus, in *Proctor*, administration segregation was found to be preordained, based on admissions by prison officials who made the recommendation, notwithstanding review by a higher authority. *See id.* at 612 n.8. Because it is particularly challenging for "prison officials to take appropriate responsive measures" to address a

15

plausible claim of such an error, a grievance alleging one will likely need greater specificity to provide "enough information" for exhaustion. *See Johnson*, 380 F.3d at 697.

## IV.

The dissent posits that Baltas exhausted his administrative remedies by giving prison officials notice of his claim as it has now been reconstituted. But the dissent elides the crucial distinction between a flawed hearing and no hearing at all. When an adjudicator has been ordered by the reviewing authority to reach a particular result, the procedure is a hearing in appearance only and accordingly violates due process as a structural matter. Such a defect would infect the entire process and cannot be remedied through a later stage of review. The distinction between a hearing and no hearing is crisp, and needs to be.

The dissent adduces the various complaints that Baltas made about the hearing: insufficient process, lack of assistance, inadequate notice, and false information in the form of misconduct reports orchestrated by harassment and improprieties. However valid such

16

complaints may be, they are by no means unusual in the disciplinary context.   More to the point, none of them is a structural error that would be incapable of correction on review.   The dissent would transmute notice of multiple familiar errors into notice of a structural defect.

A volume of errors affecting a hearing may suggest bias, which can be remedied on review.   But absent a grounded allegation to the contrary, it is understood that adjudicators commit their own errors, and that their biases are likewise their own.   Complaints of error and bias do not give notice to prison officials that the adjudicator was rendered powerless to reach any other outcome.

The district court's order granting summary judgment is AFFIRMED insofar as it pertains to Baltas's claim that the outcome of his CD hearing was predetermined in violation of his right to due process.

## APPENDIX

I am appealing a chronic placement Because:

1. I did Not receive the process I was due. On 4-10-18 I received Notification that my hearing would take place on 4-13-18, at which time I requested Advisor Services via CTO Santilli.

a) I did Not receive Advisor Services

b) CS Calderon conducted the Hearing on 4-11-18 in violation of the designated hearing schedule with the knowledge that I had not received Advisor Services & without any advisor present. (Video Preserved)

These violations denied me due process that is guaranteed by dept. policy/directive & the 14th Amendment.

&/or

2. Introduction of false information. CS Calderon falsely states I produced DRs that were "process failures". Only one of six DRs I produced were process failures, the other four were findings of Not Guilty. CS Calderon knows that I have been consistently issued false DR's by Garner staff over the past several months. (DR #s GC1-18-02-020 [etc.]).

The fact that I have received eleven DRs in 3 months time & six were Not Guilty findings is a statement [u]nto itself.

&/or

3. As indicated above DRs are the result of staff Harassment & improprieties. It should be noted I repeatedly indicated [that] these [officers] were intending to orchestrate these incidents weeks in advance & repeatedly requested supervision & transfers via grievances (1GP# 136-18-066 [etc.])[.] These incidents have resulted in a current federal civil action & a requested criminal inv[estigation] & prosecution of Garner staff.[4]

&/or

4. It should also be stated C.D. serves no purpose & has no impact on me. It is improper for Pop[ulation] Man[agement] & Admin[istration] to continue to place me on these restrictive status[es] when the efficiency of such actions have proven useless. I suffer from several Mental Health Diagnos[e]s including Borderline Personality Disorder which significantly impacts behavior & impulse control. The dept. should cease these frivolous sanctions & attempt a Treatment process.

&/or

5. Lastly, I have appeals pending for these recent DRs, [and it] is improper to place me in chronic prematurely, before the appeal process is concluded. This violates due process.

CD should be overturned for any or all of the reasons contained herein, & I should be returned to the gen[eral] pop[ulation] at a different facility.

---

[4] The "federal civil action" referenced in this grievance is not the instant action.

> \* As stated above these incidents have resulted in a serious pending civil action.    All improper incidents, issues or classifications will be included in said action.

A-258 to -259 (capitalization and spelling in original except where noted).

LOHIER, *Circuit Judge*, concurring in part and dissenting in part:

I fully agree with much of the majority's excellent opinion. I part ways only insofar as it concludes that Baltas failed to exhaust his predetermination due process claim — a conclusion that presents a much closer call than my colleagues describe.

This Court has long recognized and rightly touted a "liberal grievance pleading standard" to determine administrative exhaustion under the Prison Litigation Reform Act (PLRA) for inmates without counsel. *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *see* 42 U.S.C. § 1997e(a). An "[u]ncounselled inmate[] navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). So when such an inmate files an administrative grievance, we hardly expect that he will "lay out the facts, articulate legal theories, or demand particular relief." *Edwards v. Arocho*, 125 F.4th 336, 347 (2d Cir. 2024) (quotation marks omitted). We expect only that his grievance "object intelligibly to some asserted shortcoming." *Johnson*, 380 F.3d at 697 (quotation marks omitted).

1

While the majority opinion accepts these basic ground rules, it ultimately falters in applying them to the facts presented. Under the liberal grievance pleading standard properly applied, Baltas, a prisoner who filed his administrative grievance without a lawyer, said enough in it to alert prison officials that his hearing for placement on chronic discipline was illegally "predetermined."

In particular, Baltas's grievance claimed that he "did not receive the process [he] was due" before being placed on chronic discipline. App'x 258. It alleged that Baltas never received an advisor or adequate notice prior to the hearing. It asserted that Michael Calderon, the hearing officer, introduced "false information" during the hearing even though Calderon "kn[ew] that [Baltas had] been consistently issued false [disciplinary reports] by . . . staff over the past several months." App'x 258. What's more, Baltas wrote that the disciplinary reports were "the result of staff [h]arassment [and] improprieties." App'x 259. And he also maintained that officers "intend[ed] to orchestrate these incidents weeks in advance" in order to trigger Baltas's transfer out of the facility or placement on restricted status. App'x 259.

There is not much more that Baltas could have said. Indeed, my colleagues agree that, read liberally, Baltas's grievance "sufficiently 'alert[ed] the prison' that Baltas thought Calderon was an unfair adjudicator, even a biased one, and that Calderon's recommendation [and the] acceptance of it were compromised." Majority Op. at 13 (quoting *Edwards*, 125 F.4th at 347). They agree, too, that "Baltas plainly advanced a claim that his [chronic discipline] placement was 'predetermined' in the sense that it was a foregone conclusion." Majority Op. at 13. Although a general claim typically can be exhausted if it is reasonably suggested by the specific disciplinary problem that the plaintiff *did* adequately grieve, *cf. Amador v. Andrews*, 655 F.3d 89, 104 (2d Cir. 2011), the majority opinion nonetheless insists that Baltas never exhausted his predetermination due process claim because he failed specifically to "grieve the claim . . . that the outcome of the hearing was 'predetermined' in the literal sense because Calderon was powerless to reach any other outcome" — that is, he failed to claim a "due process violation of no hearing at all." Majority Op. at 14–15.

But fairly read, Baltas's allegations at the very least suggest a broader, structural claim that "Calderon was powerless to reach any other outcome," Majority Op. at 14, and that prison officials had conspired to create a rigged

3

hearing without meaningful procedural protections. In other words, to use the majority opinion's phrase, it suggests a sham hearing the result of which "had been dictated from above." Majority Op. at 15. By asking more of Baltas, the majority opinion asks too much of him. Baltas was under no obligation to explain with particularity *how* or *why* his hearing had a predetermined outcome. The bridge from an allegedly unfair, biased, and compromised hearing to a hearing with an allegedly predetermined outcome is really no bridge at all — or at most a bridge on which the two descriptions are just a hop, skip, and jump away from one another.

In my view, therefore, Baltas's administrative grievance adequately put prison officials on notice of his predetermination due process claim. Baltas has satisfied his obligation to exhaust the claim under the PLRA and should be permitted to proceed to the merits of that claim on appeal. Because the majority opinion instead appears to require that he "articulate legal theories" to deem this particular administrative grievance claim exhausted, *Edwards*, 125 F.4th at 347 (quotation marks omitted), I respectfully concur in part and dissent in part.

4